**Catherine RAYBURN, Plaintiff and Respondent,**

v.

**Robert L. RAYBURN, Defendant and Appellant.**

**No. 860022–CA.**

Court of Appeals of Utah.

May 29, 1987.

Gaylen S. Young, Jr., Salt Lake City, for defendant and appellant.

B.L. Dart, Salt Lake City, for plaintiff and respondent.

Before ORME, BENCH and JACKSON, JJ.

## OPINION

ORME, Judge:

In this divorce action, defendant Robert L. Rayburn appeals the valuation and distribution of a retirement plan and an award of a $45,000 property settlement to offset his medical degree. We affirm the trial court's basic disposition, but require amendment of the decree insofar as the $45,000 award is concerned.

## FACTUAL BACKGROUND

Plaintiff Catherine Rayburn and Dr. Rayburn were married in Florida on June 20, 1972. Earlier that same day, Dr. Rayburn had obtained his medical degree from the University of Florida. At the time, Mrs. Rayburn had a masters degree in zoology and was employed as a research associate at the University of Florida. The couple moved to Houston, Texas where Dr. Rayburn completed a one year internship at Baylor University. Dr. Rayburn earned $8,000 to $9,000 during the internship. Mrs. Rayburn also worked during that year, earning approximately $7,200. The couple returned to Florida where Dr. Rayburn completed a three-year residency, earning approximately $11,000 to $13,500 per year. Mrs. Rayburn worked for a short time in Florida, but upon the birth of their first child, she stopped working full-time and worked only occasionally, and on a part-time basis, throughout the rest of the marriage.

After the residency, the family moved to San Antonio, where Dr. Rayburn completed two years of military service. During the five-year period of the internship, the residency, and his military service, Dr. Rayburn acted as the primary financial provider for the family. Mrs. Rayburn stayed at home, for the most part, to raise their eventual three children.

After military service, the family moved to Salt Lake City where Dr. Rayburn joined the staff of the Primary Children's Medical Center as a pediatric-anesthesiologist. In October 1982, Mrs. Rayburn filed for a divorce.

Trial was held on July 18 and 19, 1983. At the time of trial, Dr. Rayburn was earning approximately $125,000 a year. After the two day trial, the court issued a memorandum decision. In the decision, the court determined to award custody of the three minor children, ages 9, 5, and 2, to Mrs. Rayburn and to order Dr. Rayburn to pay child support in the amount of $400 per child per month. Apparently overlooking the exact sequence of events on the Rayburns' wedding day, the court found the husband's medical degree to be a marital asset and ordered Dr. Rayburn to pay Mrs. Rayburn $45,000, payable at $750 a month, as her share of the asset and to "maintain her lifestyle for a period of adjustment." The decision would have awarded Dr. Rayburn all of his retirement fund.

About two weeks later, the court issued a supplemental decision in which the court altered its earlier decision on the retirement plan. The court, "in order to make a more equitable division of property," ordered Dr. Rayburn to pay one-half the net present value of the retirement plan, $56,850, to Mrs. Rayburn in five annual installments of $11,370 plus interest. The court entered Findings of Fact, Conclusions of Law, and a decree on September 15, 1983. The decree expressly awarded no alimony and set December 15, 1983, as the effective date of the divorce.

Dr. Rayburn promptly filed a motion for relief from judgment or for a new trial. Dr. Rayburn claimed the trial court failed to consider the drastic tax consequences of placing a present value on the retirement plan and awarding half of that to his wife. The court took Dr. Rayburn's motion under advisement. On December 9, 1983, the court issued another memorandum decision. This decision provided for amendment of the decree in such terms as would permit the five retirement plan payments to be treated as alimony for tax purposes. The court entered a second set of findings, conclusions, and decree on February 28, 1984. The second decree again awarded no alimony as such, made the embellishment for tax purposes, and set February 28 as the effective date of the divorce. Dr. Rayburn retained new counsel, who filed a motion for relief from the new judgment or a new trial. The court denied the motion and Dr. Rayburn appealed.

On appeal, Dr. Rayburn claims the court erroneously placed a high value on the retirement plan without considering the tax consequences. Dr. Rayburn also claims the court erred in finding the medical degree to be a marital asset and placing a value on it without any supporting evidence.

## RECORD ON APPEAL

Dr. Rayburn ordered a transcript on appeal of only 30 pages, representing a tiny fraction of the testimony offered at trial. Under Rule 11(e)(2) of the Rules of the Utah Court of Appeals and the predecessor Utah Rules of Appellate Procedure, "If the appellant intends to urge on appeal that a finding or conclusion is unsupported by or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion." Since the transcript provided by the appellant is insufficient to allow a review of the evidence to determine the propriety of the findings, this court accepts the trial court's Findings of Fact as true [1] and only evaluates the legal correctness of the two disputed dispositions.[2] As indicated, the disputes concern the $45,000 property settlement reflecting Mrs. Rayburn's "share" of her husband's medical degree and the payments for Mrs. Rayburn's one-half interest in the present value of the doctor's retirement plan.[3]

## THE MEDICAL DEGREE

■ Recently this court held that an advanced degree or professional license is not marital property subject to division upon divorce. *Petersen v. Petersen*, 737 P.2d 237 (Utah App.1987). However, an advanced degree often accompanies a disparity in earning potential that is appropriately considered as a factor in alimony analysis. *See id.*, 243. We reaffirm our holding in *Petersen* and analyze the instant appeal under the same analysis employed in that case.

■ The cash settlement of $45,000 payable in monthly installments of $750 cannot be sustained under *Petersen* as a property settlement, but payments of $750 per month for a five-year period are properly affirmed as alimony.[4] Criteria considered in determining a reasonable award of support must include the financial conditions and needs of the spouse in need of support, the ability of that spouse to produce sufficient income for his or her own support, and the ability of the other spouse to provide support. *Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985). *See Paffel v. Paffel*, 732 P.2d 96, 100–101 (Utah 1986) (failure to consider these three factors constitutes an abuse of discretion). Although characterizing the monthly payments as a property settlement, the trial court ex-

---

**1.** *See Sawyers v. Sawyers*, 558 P.2d 607, 608 (Utah 1976) ("Appellate review of factual matters can be meaningful, orderly, and intelligent only in juxtaposition to a record by which lower courts' ruling and decisions on disputes can be measured."). In *Sawyers*, the Supreme Court presumed the findings of the trial court to have been supported by admissible, competent, substantial evidence. *Id. See Mitchell v. Mitchell*, 527 P.2d 1359, 1360–61 (Utah 1974).

**2.** At oral argument, Dr. Rayburn advised he did not really intend to question the findings in view of the evidence, only the propriety of the disposition in view of the findings.

**3.** On appeal, Dr. Rayburn also argues that the trial court erred in filing two separate Findings of Fact and Conclusions of Law and two separate decrees with different effective dates. In this regard he relies heavily on the failure of the second batch of documents to employ the term "amended," contending confusion will result about which decree controls. The second set of findings, conclusions, and decree was of course prompted by Dr. Rayburn's motion for relief from judgment. Although not expressly labeled as "amended," the second set of findings, con-

clusions, and decree clearly supercedes the first set and are the direct subject of this appeal.

**4.** The trial court quite clearly viewed those payments as necessary for support but utilized the property settlement label as a means to preclude their termination should Mrs. Rayburn remarry. While it is true that with alimony the receiving spouse may lose some of his or her award through certain changed circumstances, like remarriage, Utah Code Ann. § 30-3-5 (1986), it is noted that with installments on a property award, the receiving spouse might lose some of the award if the paying spouse obtained a discharge in bankruptcy. By contrast, an alimony obligation would survive bankruptcy. 11 U.S.C.A. § 523(a)(5) (West Supp.1987). Characterization of required future payments as in satisfaction of a marital property disposition, rather than as alimony, is not always in the best interest of the receiving spouse. *Cf. Beckmann v. Beckmann*, 685 P.2d 1045, 1050 (Utah 1984) (The fact that an instrument is labeled "property settlement agreement" does not necessarily determine whether debt is dischargeable. Court will look at underlying nature of the debt, including whether spouse would be inadequately supported without the "property settlement.").

pressly found factors that readily meet the criteria listed in *Jones*.

As for Mrs. Rayburn's need for support and her ability to produce sufficient income, the trial court found that Mrs. Rayburn was presently unemployed, but that she had been employed and was well-educated, having acquired bachelor's and master's degrees. However, with minor children residing at home and not yet in school, Mrs. Rayburn was reluctant to return immediately to the full-time workforce. In addition, the court accepted Mrs. Rayburn's testimony that in order to bring her employment skills to a satisfactory level, she needed to return to school and obtain further education "to complement her current education."[5] As for Dr. Rayburn's ability to provide support, the trial court found that Dr. Rayburn was well-educated, having obtained an M.D. degree, and that he had a successful practice as a pediatric-anesthesiologist, earning a projected $125,000 for 1983.

In its first memorandum decision, the trial court characterized the monthly payments for Mrs. Rayburn as necessary "to maintain her life style for a period of adjustment." The 5–year period corresponded to the amount of time it would take for Mrs. Rayburn to complete her additional education on a part-time basis and until the parties' youngest child was in school all day.[6]

We acknowledge that there will be situations where an award of non-terminable rehabilitative or reimbursement alimony would be appropriate. *See Petersen v. Petersen*, 737 P.2d at 242 n. 4. However, this is not such a case. Dr. Rayburn acquired his medical degree before the parties were married. Although Mrs. Rayburn worked periodically during the marriage, she did not endure substantial financial sacrifices or defer her own education to help him obtain the degree. In addition, Mrs. Rayburn shared the financial rewards permitted by her husband's advanced degree for several years. Those rewards also resulted in the accumulation of considerable real and personal property during their marriage, which was equitably divided upon their divorce. The award of temporary alimony, at $750 per month for a maximum of five years,[7] adequately meets Mrs. Rayburn's support needs and is readily sustainable under the criteria outlined in *Jones*.

## THE RETIREMENT PLAN

■ Dr. Rayburn's retirement fund was one of the valuable assets accumulated during the marriage and was of course subject to equitable division upon divorce. *Woodward v. Woodward*, 656 P.2d 431, 433 (Utah 1982). *See Englert v. Englert*, 576 P.2d 1274, 1276 (Utah 1978). We accept the trial court's finding that the retirement fund's present value was $113,700. In its second memorandum decision, the trial court explained that it had considered several ways to distribute the wife's share of the retirement fund and found fixing a sum equal to one-half of the present value and distributing that to Mrs. Rayburn as a cash award to be the most equitable. By requiring Mrs. Rayburn's share in the retirement fund to be cashed out following divorce, the court avoided leaving the parties in a "financial entanglement that would continue for approximately twenty or thirty years and would probably result in further

---

5. This additional education was apparently in the field of computer science. No doubt computerization has mushroomed in importance in zoology, as in nearly every area of scientific endeavor, during the decade Mrs. Rayburn was unemployed. Computer literacy would greatly enhance Mrs. Rayburn's ability to obtain suitable employment.

6. This rational basis for limiting the payments to a five-year period of adjustment distinguishes the case from *Petersen*, where we declined to implement a ten-year cap on alimony otherwise payable where there was no articulated basis for automatically diminishing the award upon the

elapse of ten years. *See Petersen v. Petersen*, 737 P.2d at 243 n. 5. *See also Olson v. Olson*, 704 P.2d 564, 567 (Utah 1985).

7. The alimony obligation could terminate earlier under certain circumstances. Utah Code Ann. § 30-3-5 (1986). In addition, the district court has "continuing jurisdiction" to change the alimony award "as is reasonable and necessary," *id.* (3), provided there develops a substantial change in the parties' circumstances. *See, e.g., Naylor v. Naylor*, 700 P.2d 707, 710 (Utah 1985).

court hearings and cause future animosity between the parties."

However, the court went on to explain that "to require the defendant to pay the full sum at one time would have been an extra burden." By allowing Dr. Rayburn to make five annual payments, the court left him the option of paying his obligation out of current income or on some other basis, rather than having to liquidate the fund or sell other assets. The court additionally softened the impact by ultimately allowing the payments to be characterized in such terms as would permit them to be treated as "alimony" for tax purposes.[8]

There is admittedly some potential for confusion because of the measures taken by the trial court to massage the tax treatment of the payments to Mrs. Rayburn. However, these measures were the trial court's response to Dr. Rayburn's very own argument that the payments worked a financial hardship on him. The trial court allowed the payments to be considered "alimony" for tax purposes in order to give Dr. Rayburn the tax break of the alimony deduction while at the same time permitting Mrs. Rayburn to be cashed out within a few years. On appellate review, the trial court's apportionment of property will not be disturbed unless it works such a manifest injustice or inequity as to indicate a clear abuse of discretion. *E.g., Turner v. Turner*, 649 P.2d 6, 8 (Utah 1982). We find no abuse of discretion in the court's awarding Mrs. Rayburn a one-half interest in the retirement fund, payable over five years with interest. On the contrary, and especially with the refinements which were made to address Dr. Rayburn's concerns about taxes, the trial court's approach was clearly fair and equitable.

Accordingly, this case is remanded to the district court to amend the decree to provide that Mrs. Rayburn receive $750 per month alimony for five years and, corre-

spondingly, to delete the $45,000 cash award. The decree is otherwise affirmed. Each party shall bear his or her own costs of appeal.

BENCH and JACKSON, JJ., concur.

---

8. The trial court did not stop here in tailoring the provision to make it as painless to Dr. Rayburn as possible under the circumstances. The court stated in its Conclusions of Law: "In the event that the payments under this paragraph do not qualify as 'alimony' for tax purposes, this would constitute a change of circumstances entitling the defendant to come back before the Court and obtain a modification reducing this payment to the extent of the income tax which he is required to pay because of an inability to take a deduction of these payments as 'alimony'."