**Mary MUNNS, Plaintiff and Appellant,**

v.

**Lowell Shelley MUNNS, Defendant and Respondent.**

**No. 880585–CA.**

Court of Appeals of Utah.

April 4, 1990.

Kelly G. Cardon, Judy Dawn Barking, Kelly G. Cardon & Associates, Ogden, for plaintiff and appellant.

Ben H. Hadfield, Mann, Hadfield, & Thorne, Brigham City, for defendant and respondent.

Before BILLINGS, GARFF, and ORME, JJ.

## OPINION

GARFF, Judge:

Appellant challenges the district court's rulings in her divorce proceeding concerning alimony, property distribution, and attorney fees. We affirm in part and reverse in part.

Appellant Mary Munns and respondent Lowell Shelley Munns had been married for thirty-eight years at the time their decree of divorce was entered. Twelve children were born from this marriage, three of whom were still minors at the time the divorce was filed, and two of whom are still minors.

Appellant was, at the time of the divorce, fifty-eight years old. She is in relatively good health except for a problem with her hands, which required surgery, and an ulcer. She also suffers from a partial hearing loss, for which she must wear a hearing aid in each ear. She did not work outside of the home during the marriage, so developed no marketable skills. Since the beginning of the divorce proceedings, appellant has been unable to obtain full or part-time work except as a substitute in the local school lunch program, totalling three to four hours per day of minimum-wage work when available. At the time of the final hearing, she had only worked two shifts as a substitute, and had no expectation of getting a permanent position.

Respondent had worked full-time at Morton Thiokol for fourteen years, with an hourly wage at the time of the final hearing of $13.97 per hour. During many of the years of the marriage, he had been able to work substantial overtime, resulting in annual incomes of between $35,000 and $38,669. However, beginning in 1988, his opportunity to work overtime decreased dramatically. Respondent is also self-employed on his farm, generating an annual income of $4,000 to $7,000.

During the course of the marriage, the parties acquired the following property: A house on .82 acres of land and an adjoining unimproved .79 acre lot; household furnishings; a one-half acre lot with a double wide mobile home on it; two parcels of agricultural property, totalling about 200 acres; several old vehicles, most of which did not operate; livestock; a savings account; and a huge collection of junk and scrap metal.

Appellant filed for divorce on July 31, 1986. During the pendency of these proceedings, appellant paid off the mortgage on the house.

On November 24, 1987, the court granted the parties a divorce decree and continued the case for the purpose of obtaining testimony regarding property valuation.

The court subsequently issued a memorandum decision on August 1, 1988. In it, the court granted appellant custody of the two remaining minor children, child support of $197 per child per month, and temporary alimony of $300 per month, ending when appellant reaches the age of 62. The court valued the parties' properties and divided them in kind, equalizing the property division by awarding appellant $9,000, to be paid in two equal annual installments of $4,500.

Appellant had incurred $2,000 in attorney fees, exclusive of costs, during the pendency of the divorce. By the time of the final hearing, she had paid $475 of this amount from joint funds, leaving a balance of $1,525 plus costs. Respondent had incurred $2,300 in attorney fees. The court ordered each party to pay his or her own attorney fees.

Appellant contends that: (1) The trial court unfairly distributed the property by (a) awarding all the property in kind, rather than requiring that the properties be sold and the proceeds used to first liquidate the parties' obligations and then to be split between them; (b) awarding an oversized portion of the property, including all the liquid assets, to respondent; and (c) allowing respondent to pay the $9,000 judgment over a two year period. (2) The trial court abused its discretion in awarding her temporary alimony of only $300 per month. (3) The trial court similarly abused its discretion in failing to award her attorney fees. Respondent alleges that appellant has brought a frivolous appeal and, thus, should be required to pay his attorney fees on appeal.

I.

## PROPERTY DISTRIBUTION

The trial court awarded plaintiff, as her portion of the marital property, the family house, the mobile home and lot, the building lot, two vehicles, the household furnishings, and the savings account, plus the $9,000 judgment. Respondent received the farm property, subject to the mortgage; the remaining vehicles and machinery, subject to the debts owed on them; the junk and scrap metal; and the livestock. As indicated, he was ordered to pay appellant $4,500 within twelve months of the date of the entry of the decree, and the balance of $4,500 within the following twelve months.

■ In dividing a marital estate, the trial court is empowered to enter equitable orders concerning property distribution. *Kerr v. Kerr*, 610 P.2d 1380, 1382 (Utah 1980); *Weston v. Weston*, 773 P.2d 408, 410 (Utah Ct.App.1989); *Rasband v. Rasband*, 752 P.2d 1331, 1335 (Utah Ct.App.1988). In making such orders, the court is permitted considerable discretion, which will not be disturbed so long as it exercises this discretion in accordance with the standards set by this state's appellate courts. *Weston*, 773 P.2d at 410; *see also Carlton v. Carlton*, 756 P.2d 86, 87 (Utah Ct.App.1988).

■ First, we do not find that the trial court abused its discretion in awarding all property in kind rather than ordering its sale and then awarding the proceeds. It is clear from the record that the trial court considered forcing such a sale, but apparently abandoned that solution because of the parties' hostility toward each other and their total refusal to cooperate during the course of the litigation.[1] The court is not required to order the sale of any property, but may award property in kind and leave any sale to the discretion of the party to whom it is awarded.

■ Second, we do not find that the trial court awarded a substantially larger portion of the marital estate to respondent than to appellant. To permit appellate review of a trial court's property distribution in a divorce proceeding, the distribution should be based upon adequate findings. *Andersen v. Andersen,* 757 P.2d 476, 479 (Utah Ct.App.1988). These findings must place a dollar value on the distributed assets. *Id.*

In the present case, the trial court was so concerned with finding the appropriate property values that, when the valuation evidence was inadequate, it continued the hearing for further appraisal information.[2] After hearing evidence as to the value of the parties' properties, and after personally inspecting the property, the court made specific written findings as to value of each item of property, as follows: (1) The family home and lot plus the undeveloped lot, $26,388; (2) the mobile home and lot, $26,000; (3) the building lot, $11,000; (4) the farm, $48,547; (5) various vehicles and farm machinery, $23,859; (6) junk and scrap metal, $10,000; (7) household furnishings, $3,000; (8) livestock, $4,000; (9) the savings account, $3,200; and (10) two vehicles, $850.

■ This court will not disturb the trial court's valuations absent a showing of a clear abuse of discretion. *Ebbert v. Ebbert,* 744 P.2d 1019, 1023 (Utah Ct.App. 1987). The evidence presented on the record supports the trial court's findings. Respondent correctly points out that much of appellant's so-called "evidence" as to her property valuations were not part of the record, but were introduced for the first time on appeal. It is well settled that we do not review evidence for the first time on appeal. *Low v. Bonacci,* 788 P.2d 512, 513 (1990). Further, even if appellant's appraisal had been a part of the evidence, failure of the court to accept one party's proposed valuation of property is not an abuse of discretion. *Ebbert,* 744 P.2d at

---

1. At the close of the September 22, 1986 hearing, at which the trial court ordered the parties' divorce, the court stated:

   As far as this court is concerned, I think you are going to have to dispose of some property or else you are going to lose it by default. I'm going to make an order that neither party disposes of any property unless both attorneys consent to the sale or otherwise in refinancing or otherwise because I can't see how you can survive in making those payments and apparently not getting any income out of the farm. It doesn't seem practical to the court that you retain the 300 acres, but that's up to the parties to decide on ... and I hope the parties can get together and figure out some way to dispose of the property because you are not going to be able to live separately on the present income.

   As subsequent events indicated, the parties were unable to cooperate in even the most trivial matters, so the trial court apparently concluded that they would not be able to cooperate in making major property sales.

2. The trial court stated, after the first valuation hearing, that:

   The court is left without a whole lot of information relative to values.

   We have not had one professional appraiser in here that I felt had any real competence, either in personal property or real estate, either one. I understand the reasons for that but I'm still left without information that would be very helpful, particularly in light of the testimony by Mr. Munns that he wants to retain a lot of that property, and I can understand his desire to do so, but it makes it very difficult.... I recognize the difficulty of getting appraisals but I, frankly, cannot decide a case of this magnitude without having some idea as to the values of the property, and had the motion not been made, I'd have made it myself. I don't know how to handle that, but I'm going to give a continuance on this thing for one purpose....

   In this case I find it entirely lacking testimony as to values. The plaintiff's case had not rested. I'm going to give an opportunity for both parties to come back at another time and schedule it for one half day, one purpose only. That's for testimony relative to values, hopefully from some experts.

1023. We find that the trial court did not abuse its discretion in evaluating the parties' property and, therefore, did not unfairly distribute it.

Third, the record does not support appellant's claim that the trial court awarded all the nonliquid assets to her while awarding all the liquid assets to respondent. It is well settled that there is no fixed formula for the division of marital property, but that the trial court has the power to divide property and income so that the parties may readjust their lives to their new circumstances as well as possible. *Weston*, 773 P.2d at 411; *see also Sorensen v. Sorensen*, 769 P.2d 820, 824 (Utah Ct.App. 1989) *cert. granted* 779 P.2d 688 (1989).

Here, the trial court awarded appellant, who needed income and was clearly unable to provide herself with a place to live, the marital home, the building lot, the mobile home and lot, vehicles, the household furnishings, a savings account, and the $9,000 judgment. Respondent, who loved the farm and worked it, and who had acquired the junk over the course of the marriage, was awarded the farm property subject to the mortgage, vehicles and farm machinery subject to the debts on them, livestock, and the junk. The trial court apparently allocated the property based upon the parties' needs and interests. We find no error in this.

While the farm property generated some income, the record suggests that the income generated did not even offset the cost of servicing the various mortgages on the property. Farm property and equipment are not easily and quickly sold, and so are not, as appellant contends, liquid assets. However, the junk and the livestock have some liquidity, in that a $10,000 offer had been made for the junk and respondent had sold some of the livestock during the pendency of this action.

While appellant's assets are, likewise, not very liquid, she was awarded more liquid assets than respondent. Although the house was in such poor condition that it probably could not be sold without a great deal of renovation expense, the parties had previously sold the mobile home to a buyer who had defaulted, indicating that it could be sold or at least rented; the building lot was certainly able to be sold; and the savings account and the $9,000 judgment, being cash, are liquid assets. We find no abuse of discretion here.

■ Fourth, the trial court did not err in allowing respondent to pay off the $9,000 judgment over the period of two years. In allocating the properties, the trial court granted the debt-free properties to appellant, but granted properties heavily encumbered with debt to respondent. From the court's remarks during the trial, it is evident that he was concerned with respondent's ability to make the mortgage payments on the farm property, along with his other, court-ordered obligations. Given respondent's heavy debt burden, we do not find that the trial court abused its discretion in allowing respondent to pay the judgment off over a two year period.

In sum, we do not find that the trial court abused its discretion in distributing the parties' scant resources.

## II.

### ALIMONY

#### A. Amount

Appellant argues that the trial court did not consider the necessary factors in making the alimony award when, as she states, the record clearly shows that the property awarded to her is not capable of producing income, she is not financially able to repair her dilapidated house, and $300 per month is inadequate to cover her personal expenses. Further, she states that she is unable to produce a sufficient income for herself because she is a woman in her fifties with no marketable skills and no prospects of employment, while respondent, because of his assets and his regular employment, is in a position to pay a larger alimony award than the court ordered.

Respondent, on the other hand, maintains that appellant does not have financial need for an increased alimony award because the $300 in alimony, along with the child support, rental income she should be

able to receive from the mobile home property, and interest income on the proceeds of the sale of the building lot should result in a net income sufficient to meet her expenses. He further argues that she is capable of part-time employment and, in fact, is employed part-time; and that his court-ordered debt burden, including alimony, has left him with only $410.83 per month to live on, so he is unable to pay additional alimony.

■ In setting an award of alimony, a trial court must consider three factors: (1) the financial condition and need of the receiving spouse; (2) the ability of the receiving spouse to produce a sufficient income for him or herself; and (3) the ability of the responding spouse to provide support. *Noble v. Noble,* 761 P.2d 1369, 1372 (Utah 1988); *Jones v. Jones,* 700 P.2d 1072, 1075 (Utah 1985); *Throckmorton v. Throckmorton,* 767 P.2d 121, 124 (Utah Ct.App.1988). On appeal, we will not disturb the trial court's alimony award unless such a serious inequity has resulted as to manifest a clear abuse of discretion. *Fullmer v. Fullmer,* 761 P.2d 942, 950 (Utah Ct.App.1988).

■ Appellant estimated that she would need a minimum of $1,090 per month to meet her expenses. The trial court specifically found, in its findings of fact, that appellant had not worked outside the home during the marriage except for her part-time work in the school lunch program, but was capable of employment. It also found that respondent was currently employed at the rate of $13.90 per hour at Morton Thiokol, but that there were substantial marital debts, which it ordered respondent to pay. It then granted plaintiff $300 per month alimony based upon "the debts, the duration of payment, duration of the marriage, plaintiff's lack of work experience and employment skills, recognizing the ages of the children, the eventual receipt of social security and retirement benefits together with income realized from the properties." Upon a review of the record, including these findings, it is apparent to us that the trial court did consider the three *Jones* factors in determining the amount of alimony.

The purposes of alimony include enabling the receiving spouse to maintain, as nearly as possible, the standard of living enjoyed during the marriage, and preventing the receiving spouse from becoming a public charge. *Throckmorton,* 767 P.2d at 124; *Martinez v. Martinez,* 754 P.2d 69, 74 (Utah Ct.App.1988) *cert. granted* 765 P.2d 1277 (1989); *Naranjo v. Naranjo,* 751 P.2d 1144, 1146 (Utah Ct.App.1988). Further, alimony should, so far as possible, equalize the parties' respective standards of living. *Naranjo,* 751 P.2d at 1146; *see also Gardner v. Gardner,* 748 P.2d 1076, 1081 (Utah 1988).

Here, the parties have approximately equal, if low, standards of living, which is not a substantial deviation from the "low, minimum" standard of living which the parties experienced during the marriage. "This is simply one of those all-too-frequent situations where the court was confronted with the impossible task of attempting to cut one blanket to cover two beds and satisfy both parties when the truth of the matter is that they cannot afford a divorce, but must have one anyway." *Bader v. Bader,* 18 Utah 2d 407, 424 P.2d 150, 151 (1967). We find no abuse of discretion in the trial court's amount of alimony awarded.

### B. Duration

■ However, the trial court ordered that appellant's alimony terminate, inter alia, "upon the plaintiff's 62nd birthday and her eligibility to begin receiving Social Security payments." Appellant challenges this termination of her alimony award.

While an award of temporary alimony is entirely appropriate in other situations, *see, e.g., Rayburn v. Rayburn,* 738 P.2d 238, 241 (Utah Ct.App.1987), we have held on numerous occasions that temporary alimony is inappropriate for women in circumstances comparable to those of appellant.

For example, in *Andersen v. Andersen,* 757 P.2d 476 (Utah Ct.App.1988), the wife was in her fifties, had spent most of her life providing services to her family with no monetary remuneration, and had minimal work experience. This court found that

she could not be expected to find a job immediately upon completing her schooling, and that her salary, when she did find employment, was unknown. *Id.* at 478. Thus, it overruled a temporary alimony award. *Id.* at 479.

Similarly, in *Jones,* 700 P.2d at 1072, Mrs. Jones was fifty-two years old at the time of trial. She had only performed sporadic, seasonal, and unskilled jobs during the marriage, and, with the full consent of her husband, had devoted most of her time to rearing the parties' four children. She had no professional training, few marketable skills, and no independent income. *Id.* at 1075. The Utah Supreme Court stated, in overruling her temporary alimony award and ordering permanent alimony, that it is "entirely unrealistic to assume that a woman in her mid-50's with no substantial work experience or training will be able to enter the job market and support herself in anything even resembling the style in which the couple had been living." *Id.* at 1075; *see also Paffel v. Paffel,* 732 P.2d 96, 103 (Utah 1986); *Olson v. Olson,* 704 P.2d 564, 567 (Utah 1985); *Higley v. Higley,* 676 P.2d 379, 381–82 (Utah 1983); *Rasband,* 752 P.2d at 1334; *Sampinos v. Sampinos,* 750 P.2d 615, 618 (Utah Ct.App.1988).

In the present case, appellant is a woman in her late fifties, who, while in reasonably good health, has never been substantially employed and has not developed any employable skills. It is similarly unrealistic to assume that she will ever be able to provide for herself at any reasonable level. Therefore, the trial court abused its discretion in terminating her alimony at age sixty-two. If the parties' circumstances change as a result of one or the other's receipt of social security and/or retirement benefits, the court, with its continuing jurisdiction, may modify the alimony award at such time as the entitlement and actual amounts of the benefits become definite.[3] *Olson,* 704 P.2d at 567; *Andersen,* 757 P.2d at 479. We, therefore, reverse the trial court's termination of appellant's alimony and order that respondent be required to pay alimony to appellant indefinitely. Of course, alimony will terminate as a matter of statute upon certain occurrences, *see* Utah Code Ann. § 30–3–5 (1989), and may be modified as to amount upon appropriate petition and a showing of changed circumstances.

## III.

## ATTORNEY FEES

Appellant alleges that the trial court abused its discretion by failing to award her attorney fees. She states that she should have been awarded attorney fees because the record is replete with evidence that she is in dire need of financial assistance, having no income other than alimony and child support and no liquid assets or marketable skills, while respondent has a steady job and liquid assets. On the other hand, respondent alleges that appellant did not demonstrate need because her property is virtually debt-free and she would be receiving a $9,000 judgment over the space of two years from which she could pay the attorney fees.

To recover attorney fees in a divorce action, the moving party must show evidence (1) establishing the financial need of the requesting party, and (2) demonstrating the reasonableness of the amount of the award. *Rasband,* 752 P.2d at 1336; *Huck v. Huck,* 734 P.2d 417, 419 (Utah 1986); *Kerr,* 610 P.2d at 1384; *Sorensen,* 769 P.2d at 832. Where either of these two factors have not been shown, we have reversed awards of attorney fees. *Beals v. Beals,* 682 P.2d 862, 864 (Utah 1984).

> In a situation such as this, where the defendant is gainfully employed, making a salary sufficient to satisfy her needs, is adequately housed, and is in good health; one of the functions of alimony is not to provide retirement income. We do not want to confuse alimony with annuity.
> *Id.* at 528–29.

---

**3.** Respondent's reliance on language in *Dehm v. Dehm,* 545 P.2d 525 (Utah 1976) for the proposition that alimony is not intended to provide retirement income is not well placed. Taking the relevant language in context is sufficient to distinguish *Dehm* from the present situation, in which appellant has never worked outside the home and is almost totally without ability to provide for herself:

■ The parties both succeeded in establishing their respective financial need, and the attorneys presented evidence demonstrating the reasonableness of their respective fees. Therefore, the trial court would have been justified in awarding either party attorney fees. However, while a trial court may award attorney fees in divorce proceedings, pursuant to Utah Code Ann. § 30-3-3 (1989), *Rasband*, 752 P.2d at 1336, the decision to award attorney fees lies primarily within the trial court's sound discretion. *Kerr*, 610 P.2d at 1384; *Andersen*, 757 P.2d at 480. Under the present circumstances, in which neither party reasonably has the ability to pay the other party's attorney fees, we do not find that the trial court abused its discretion in ordering each party to pay his or her own attorney fees.

## IV.

### FRIVOLOUS APPEAL

■ Respondent argues that appellant has brought a frivolous appeal because she relies substantially on valuation evidence that was not admitted on the record, so she does not have a reasonable factual basis for her appeal. He, therefore, requests that this court award him attorney fees on appeal.

We have defined a frivolous appeal as one without a reasonable legal or factual basis as defined in rule 40(a) of the Rules of the Utah Court of Appeals. *Riche v. Riche*, 784 P.2d 465, 470 (Utah Ct.App. 1989); *Maughan v. Maughan*, 770 P.2d 156, 162 (Utah Ct.App.1989); *Porco v. Porco*, 752 P.2d 365, 369 (Utah Ct.App.1988). Because appellant prevailed on the issue of the termination of alimony, she has not brought a frivolous appeal, even though some of her grounds for error were not well taken. With respect to the issues upon which respondent prevailed, an unsuccessful appeal which is worthy of consideration is not an egregious case worthy of sanctions and, therefore, is not frivolous. *See Maughan*, 770 P.2d at 162; *Brown v. Harry Heathman, Inc.*, 744 P.2d 1016, 1019 (Utah Ct.App.1987). We, therefore, decline to award attorney fees to respondent on appeal.

Affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this opinion.

BILLINGS and ORME, JJ., concur.