2008 UT App 392

**William A. JENSEN, Petitioner and Appellee,**

v.

**Sonja JENSEN, Respondent and Appellant.**

**No. 20070312–CA.**

Court of Appeals of Utah.

Oct. 30, 2008.

Richard S. Nemelka and Stephen R. Nemelka, Salt Lake City, for Appellant.

Bart J. Johnsen, Salt Lake City, for Appellee.

Before Judges GREENWOOD, DAVIS, and McHUGH.

## OPINION

**GREENWOOD, Presiding Judge:**

¶ 1 Sonja Jensen (Wife) appeals from the Decree of Divorce entered by the trial court, arguing, among other things, that the trial court erred both in its alimony and property division determinations and in failing to award her attorney fees. We affirm.

## BACKGROUND

¶ 2 Wife and William A. Jensen (Husband) were married for nearly sixteen years prior to their separation in June 2003. At the time Husband filed for divorce, he resided in the parties' marital residence in Murray, Utah (the Murray residence) and was employed, earning approximately $10,000 per month.[1] Wife was forty-one years old, unemployed, and resided in the parties' condominium in Arizona (the Arizona condo). Wife worked during the early years of the marriage while Husband completed college. Afterwards, she did not work except for a brief period in 2001 and 2002, when she worked for Southwest Airlines. From the time of separation until the divorce was finalized, Husband paid the mortgage on the Arizona condo. Approximately one year after the parties separated, Wife was awarded temporary alimony of $2859 per month, effective June 11, 2004.

¶ 3 At the conclusion of a two-day trial, the trial court awarded Wife $2581 per month in alimony for a period of five years, while simultaneously denying her request for retroactive alimony—applicable from the June 2003 separation to the June 2004 temporary alimony award—because it found that Wife had presented insufficient evidence to justify retroactive alimony. In arriving at the alimony amount, the court imputed $1419 per month in income to Wife based on her brief employment with Southwest Airlines.[2] The court awarded the Murray residence to Husband and the Arizona condo to Wife. The court valued the Murray residence and the Arizona condo based upon their appraised values and divided the equity equally, ordering the parties to sell each property or the nonpossessing party to be "bought-out" when the parties' younger child reaches age eighteen or graduates from high school. In reaching this ruling, the court set aside the parties' previously entered stipulation that stated that the Murray residence would be sold at the time the divorce was finalized.

¶ 4 Because Husband had made the mortgage payments on the Arizona condo since the parties' separation, the court ordered Wife to reimburse Husband for one-half of those payments. With insufficient evidence to value the personal property, the trial court further ordered all of the personal property to be sold and the proceeds divided equally. Finally, the trial court ordered each party to pay their own attorney fees and dealt with other matters not at issue in this appeal. Wife appeals, arguing that the trial court abused its discretion in several respects.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 Wife argues that the trial court erred in limiting the amount and duration of alimony she would receive from Husband. Similarly, Wife argues that the trial court abused its discretion in denying her request for retroactive alimony. " 'Trial courts have considerable discretion in determining alimony . . . and [determinations of alimony] will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated.' " *Davis v. Davis*, 2003 UT App 282, ¶ 7, 76 P.3d 716 (alterations in original) (quoting *Breinholt v. Breinholt*, 905 P.2d 877, 879 (Utah Ct.App.1995)).

¶ 6 Wife also argues that the trial court erred by not enforcing the parties' stipulation to immediately sell the Murray residence. A trial court's decision to reject or modify a

---

1. Following a custody evaluation and stipulation by the parties, Husband was awarded primary legal and physical custody of the parties' two children. As a result, custody is not at issue in this appeal.

2. We note that the findings of fact state that $1409 per month in income would be imputed to Wife. However, our review of the record and the trial court's calculations convince us that the correct amount is $1419. For convenience, and because neither party objects to this inconsistency, we cite to the correct amount of $1419 throughout this opinion.

stipulation related to property division in a divorce proceeding is reviewed for an abuse of discretion. *See Clausen v. Clausen,* 675 P.2d 562, 564 (Utah 1983).

¶7 In addition, Wife argues that the trial court erred in its personal property distribution as well as in ordering Wife to repay Husband for one-half of the postseparation payments on the Arizona condo mortgage. We will make changes to " 'a trial court's property division determination in a divorce action only if there was a misunderstanding or misapplication of the law resulting in substantial and prejudicial error, the evidence clearly preponderated against the findings, or such a serious inequity has resulted as to manifest a clear abuse of discretion.' " *Davis,* 2003 UT App 282, ¶8, 76 P.3d 716 (quoting *Bradford v. Bradford,* 1999 UT App 373, ¶25, 993 P.2d 887 (internal quotation marks omitted)).

¶8 Finally, Wife contends that the trial court erred in failing to award her attorney fees. We review a trial court's decision regarding attorney fees in a divorce proceeding for an abuse of discretion. *See id.* ¶9.[3]

## ANALYSIS

### I. Alimony

¶9 Wife argues that the trial court abused its discretion in awarding her only $2581 per month in alimony for a period of only five years. Relatedly, Wife argues that the trial court erred in denying her request for retroactive alimony applicable to the approximately one-year time period between the parties' separation and the entry of the temporary alimony award. Trial courts have broad discretion in making alimony awards so long as they consider at least the following factors:

(i) the financial condition and needs of the recipient spouse;

(ii) the recipient's earning capacity or ability to produce income;

(iii) the ability of the payor spouse to provide support;

(iv) the length of the marriage;

(v) whether the recipient spouse has custody of minor children requiring support;

(vi) whether the recipient spouse worked in a business owned or operated by the payor spouse; and

(vii) whether the recipient spouse directly contributed to any increase in the payor spouse's skill by paying for education received by the payor spouse or allowing the payor spouse to attend school during the marriage.

Utah Code Ann. § 30–3–5(8)(a)(i)–(vii) (Supp. 2008).[4] In addition, trial courts must be mindful of the primary purposes of alimony: "(1) to get the parties as close as possible to the same standard of living that existed during the marriage; (2) to equalize the standards of living of each party; and (3) to prevent the recipient spouse from becoming a public charge." *Richardson v. Richardson,* 2008 UT 57, ¶7, 611 Utah Adv. Rep. 12, —— P.3d ——, 2008 WL 3835161 (citations omitted). Where a trial court considers these factors, we will disturb its alimony award only if there is " 'a serious inequity . . . manifest[ing] a clear abuse of discretion.' " *Kelley v. Kelley,* 2000 UT App 236, ¶26, 9 P.3d 171 (quoting *Childs v. Childs,* 967 P.2d 942, 946 (Utah Ct.App.1998) (internal quotation marks omitted)).

### A. Amount of Alimony

¶10 Wife argues that the trial court erred in determining the amount of alimony. More precisely, Wife argues that the trial court abused its discretion by imputing income to her at higher than minimum wage,

---

**3.** Although Wife also asks this court to review the trial court's alleged failure to set aside portions of a pretrial minute entry, we refuse to do so because Wife's brief presents us with no legal argument or justification for the same. *See Valcarce v. Fitzgerald,* 961 P.2d 305, 313 (Utah 1998) (stating that appellate courts will generally not address arguments that are inadequately briefed).

**4.** Although title 30, chapter 3 of the Utah Code has been amended since Husband filed for divorce, the relevant portions of the current version are substantively identical to those portions of the older version. *Compare* Utah Code Ann. § 30–3–5 (Supp.2008), *with id.* (Supp.2003). Thus, for convenience we cite to the current version of the statute throughout this opinion.

reducing her claimed monthly expenses, and failing to equalize the parties' standards of living. In awarding Wife alimony, the trial court found that Husband earned approximately $10,000 per month and had monthly needs of $5084. While the court found Wife was suffering from a situational depression, it also found that her depression did not affect her ability to work. Moreover, the court found that "[Wife's] depression will be reduced" by resolution of the parties' divorce. Consequently, the court found that Wife was currently underemployed, and imputed $1419 per month in income to Wife, based on her short-term employment with Southwest Airlines; employment which the court found "to be a benchmark of [Wife's] ability to earn an income." The trial court also found that Wife's actual, demonstrated financial need was $4000 per month. Subtracting Wife's imputed income from her demonstrated need, the court found that Wife required an additional $2581 per month to support herself and that Husband was able to pay the same to Wife.

¶ 11 In addition, the court noted the length of the parties' marriage and the fact that Husband, not Wife, had custody of the parties' minor child after the divorce. The trial court was presented with evidence that Wife worked outside the home while Husband finished his schooling, but failed to note that fact in its findings. Despite that omission, we conclude that the trial court considered each of the relevant statutory factors in determining the amount of Wife's alimony award, and accordingly, we now examine whether the amount of alimony was seriously inequitable.[5]

 ¶ 12 Wife argues that the trial court abused its discretion by imputing excessive income to her and in determining her financial need. However, Wife fails to marshal the evidence necessary to challenge these factual findings and simply reargues the evidence she presented at trial. *See Moon v. Moon*, 1999 UT App 12, ¶ 24, 973 P.2d 431. The trial court made detailed findings regarding Wife's imputed income and her actual, demonstrated need. The court specifically noted that income was imputed to Wife based on her past employment, which the court found to be a "benchmark" of her earning potential. Also, although Wife's trial exhibit set her financial need at $4704 per month, not including payment of debt, the court found that she failed to prove the existence of much of her claimed debt. Further, the court reduced Wife's monthly need because it found that her "claimed expenses for window cleaning, food and household supplies, personal hygiene, health and auto insurance, an automobile lease that she does not have, clothing, psychiatrist, storage, and health club are overstated and exaggerated." Therefore, we conclude that the trial court's findings are supported by the evidence and the trial court did not abuse its discretion by imputing income to Wife in excess of the minimum wage or by reducing her monthly expenses.[6]

¶ 13 Wife also argues that the trial court abused its discretion by failing to equalize the parties' standards of living. In addition to the relevant statutory factors already discussed, trial courts must "also consider[ ] the primary aims of alimony when making an award." *Richardson*, 2008 UT 57, ¶ 7, ─── P.3d ───. These aims include "get[ting] the parties as close as possible to the same standard of living that existed during the marriage," or otherwise equalizing the parties' standards of living. *Id.* The Utah Code provides that trial courts in divorce actions "should look to the standard of living, existing at the time of separation, in determining alimony," Utah Code Ann. § 30-3-5(8)(c),

5. Although it is not clear from the briefing, the parties appear to have been involved in some business ventures together. While we do not know whether Wife was "work[ing] in a business owned or operated by [Husband]," *see id.* § 30-3-5(8)(a)(vi), the trial court awarded the entities in question to Wife. As such, the court's failure to consider this statutory factor explicitly is inconsequential.

6. Wife also contends that the trial court failed to consider her monthly mortgage payment on the Arizona condo, arguing that the temporary alimony award failed to include the same mortgage payment. However, the trial court specifically determined Wife's needs based on its assessment of her exhibit produced at trial. That exhibit included, among Wife's monthly expenses, mortgage payments and homeowner's association fees presumably related to the Arizona condo.

and "*may*, under appropriate circumstances, attempt to equalize the parties' respective standards of living." *Id.* § 30–3–5(8)(d) (emphasis added). However, simply "attempting to equalize the parties' income[,] rather than going through the traditional needs analysis," is an abuse of discretion. *Bakanowski v. Bakanowski*, 2003 UT App 357, ¶ 12, 80 P.3d 153; *see also* Utah Code Ann. § 30–3–5(8)(c) (requiring courts to "consider all relevant facts and equitable principles" when awarding alimony). This is so because, regardless of the payor spouse's ability to pay more, "the [recipient] spouse's demonstrated need must ... constitute the maximum permissible alimony award." *Bingham v. Bingham*, 872 P.2d 1065, 1068 (Utah Ct.App.1994).

¶ 14 As stated above, the trial court analyzed Wife's actual, demonstrated postseparation need. The trial court found that Wife's need, in excess of her earning capacity, was $2581 per month. Husband, after payment of his own expenses and $2581 in alimony to Wife, had approximately $2335 in surplus monthly income. Husband had custody of the parties' minor child and was awarded only $102.64 per month in child support. Although the trial court did not specifically discuss the parties' standard of living prior to their separation, we cannot say that the trial court abused its discretion in failing to equalize the parties' standards of living and, as such, we determine that the amount of alimony awarded to Wife was within the trial court's allotted discretion.

## B. Duration of Alimony

¶ 15 Wife asserts that the trial court abused its discretion in limiting her alimony to only five years, given that the parties were married for nearly sixteen years. In supporting its alimony award, the trial court found that Wife has treatable depression and "has the ability to work." The court continued, stating:

> [D]ue to the age of the parties[,] if the alimony period were longer than five years, [Wife] would become older and rely only on the alimony for her support and ... such reliance would be a disservice to her. This court finds that [Wife] has the ability to use the period of five years to put

her house in order and be able to support herself at that time.

¶ 16 Although the Utah Code states that alimony may not be awarded for longer than the term of the marriage absent "extenuating circumstances," *see* Utah Code Ann. § 30–3–5(8)(h) (Supp.2008), the Code does not bar an award for a shorter duration. *See generally id.* § 30–3–5. Thus, an alimony award for shorter than the term of the marriage will be upheld unless it results in a serious inequity evidencing an abuse of the trial court's discretion. *See Kelley v. Kelley*, 2000 UT App 236, ¶ 26, 9 P.3d 171. Also, while abbreviated alimony awards have been reversed by Utah appellate courts, *see, e.g., Munns v. Munns*, 790 P.2d 116, 122 (Utah Ct.App. 1990) (listing several cases overruling alimony awards of short duration), "an award of [abbreviated] alimony is entirely appropriate in [certain] situations." *Id.* at 121; *see also Rayburn v. Rayburn*, 738 P.2d 238, 240–41 (Utah Ct.App.1987) (upholding abbreviated alimony award).

¶ 17 In *Munns v. Munns*, 790 P.2d 116 (Utah Ct.App.1990), this court overruled the trial court's approximately four-year alimony award where the wife was fifty-eight years old when her thirty-eight year marriage ended, was still responsible for three minor children, "ha[d] never been substantially employed and ha[d] not developed any employable skills." *Id.* at 122. In contrast, this court upheld the trial court's limitation of alimony to a five-year term in *Rayburn v. Rayburn*, 738 P.2d 238 (Utah Ct.App.1987). *See id.* at 241. In so doing, the *Rayburn* court noted that the parties had been married approximately ten years and that Mrs. Rayburn was educated but presently unemployed, had worked periodically throughout the marriage, and "shared the financial rewards permitted by her husband's advanced degree ... [including] the accumulation of considerable real and personal property ... which was equitably divided upon their divorce." *Id.* Furthermore, the *Rayburn* court justified the five-year term as sufficient "to maintain her life style for a period of adjustment." *Id.*

¶ 18 Wife argues that due to her advanced age and her lack of significant work experi-

ence outside the home, alimony should have been awarded for the length of the marriage. In support, Wife states that no evidence was presented to the trial court indicating that she "had the necessary education or work skills to increase her income" within the five-year period so as to cover her monthly shortfall or that her circumstances would be any different in five years than at the time of trial.

¶ 19 In supporting its order limiting the duration of Husband's alimony obligation, the trial court took note of the fact that Wife had already been receiving temporary alimony for over two years, and found that Wife "has the ability to . . . put her house in order and be able to support herself" within the additional five-year adjustment period. The court continued, finding that "if the alimony period were longer than five years, [Wife] would become older and rely only on the alimony for her support and that such reliance would be a disservice to her." Implicitly important to the court's decision was that Wife was only forty-one years old at the time of the parties' separation, and that Husband, not Wife, had custody of the parties' only minor child. Additionally, Wife herself testified that she has several marketable skills, has an associate's degree, and had worked outside of the home for approximately four years of the parties' sixteen-year marriage. Along these same lines, there was undisputed evidence that Wife had been secretly employed by her father during part of the pendency of this case.[7] Furthermore, Wife was awarded an equal division of the parties' personal and real property accumulated during the marriage.

¶ 20 Although this alimony award is vulnerable to criticism,[8] we refrain from substituting our judgment for that of the trial court. *See Willey v. Willey*, 951 P.2d 226,

231 (Utah 1997) ("In certain instances, the appellate court may exercise equitable powers [in reviewing alimony determinations] and take upon itself the responsibility of weighing the evidence and making its own findings of fact. However, this exception must not become merely a guise under which an appellate court substitutes its own judgment for that of the trial court." (citations omitted)). Evidence was presented to the trial court such that it could, within its discretion, determine that five years was a sufficient length of time for Wife to "get her house in order" so that she would no longer require support from Husband. Thus, we cannot say that the trial court clearly and prejudicially abused its discretion in limiting the duration of Wife's alimony award.

### C. Denial of Retroactive Alimony

¶ 21 Wife argues that, contrary to the trial court's finding, she presented sufficient evidence to support an award of retroactive alimony applicable to the approximately one-year time period between the parties' separation and entry of the temporary alimony award. We disagree. While Wife undoubtedly presented evidence of her needs at trial, neither she nor the court spent more than a mere moment discussing retroactive alimony. Trial courts must balance the unique set of facts presented by each divorce to achieve as fair and just a result as possible under the circumstances. Based on the sparsity in the record relative to retroactive alimony we determine that the trial court's finding of insufficient evidence to justify retroactive alimony and its accompanying disposition of Wife's claim for the same is not a clear abuse of discretion.

### II. Disregarding the Parties' Stipulation

¶ 22 Wife argues that the trial court erred when it disregarded the parties' earlier

---

7. Under an assumed name, Wife worked full-time as a distributor for a vitamin company associated with her father's business. At trial, Husband's counsel read into evidence an e-mail between Wife and her mother wherein Wife instructed her mother not to disclose this employment. In the e-mail, Wife wrote: "Please don't say *anything to anyone* about [my employment]. If [Husband] gets one drift that I'm working in any way, I'll be hearing about it in court . . . and my alimony will be out the window. As far as

you know, I'm still suffering from major depression. . . ."

8. The trial court did not specify how Wife could improve her income sufficiently so that she would no longer need to rely on alimony for her support. Furthermore, the trial court's concern that Wife might become dependent on the alimony could be used as a reason to deny all but permanent alimony.

property division stipulation, wherein the parties agreed to immediately sell the Murray residence and divide the equity, with Husband receiving a larger share to compensate him for his half of the equity in the Arizona condo. Wife contends that this stipulation, made on the record, could not be undone or modified by the trial court. We disagree.

¶ 23 Even when made on the record, a stipulation regarding property division in a divorce proceeding "is not necessarily binding on the trial court. It is only a recommendation to be adhered to if the trial court believes it to be fair and reasonable." *Colman v. Colman*, 743 P.2d 782, 789 (Utah Ct.App.1987). In other words, "even if the trial court['s divorce decree] does not exactly follow the parties' agreement, such a decree is still within the court's reasonable discretion." *Id.* This is so because, in accordance with the equitable power of trial courts in divorce actions, trial courts should not be prevented "from doing that which justice and equity require for the interest and welfare of the parties involved." *Reese v. Reese*, 1999 UT 75, ¶ 25, 984 P.2d 987 (internal quotation marks omitted); *see also Land v. Land*, 605 P.2d 1248, 1251 n. 5 (Utah 1980) (recognizing that a "trial court has discretion to adopt or reject an agreement between the parties as part of the original [divorce] decree . . . as equity might dictate").

¶ 24 In this case, Husband filed a motion to set aside the stipulation, arguing that the immediate sale of the Murray residence would not be in the best interest of the parties' minor child residing therein. In a subsequent minute entry, the trial court granted the motion. Accordingly, the trial court ultimately ordered that the Murray residence and the Arizona condo be treated

as specified in the stipulation, with the sole difference being that the parties were not required to immediately sell either property "[b]ecause there is a minor child residing in the Murray [residence]." Given the court's equitable powers in divorce proceedings and the similarity between the stipulation and the final decree, we see no abuse of discretion in the court's decision to grant the motion setting aside the parties' stipulation. *See Colman*, 743 P.2d at 789.[9]

### III. Property Distribution

¶ 25 Wife urges this court to reverse the trial court's order that the parties sell all the personal property and divide the proceeds equally.[10] In a similar vein, Wife argues that the trial court erred in ordering her to repay Husband for one-half of the mortgage payments he made on the Arizona condo between the parties' separation and divorce. "In dividing a marital estate, the trial court is empowered to enter equitable orders concerning property distribution." *Munns v. Munns*, 790 P.2d 116, 118 (Utah Ct.App.1990). Where the court is presented with insufficient evidence with which to value the property, it is within the court's sound discretion to decide whether to force the sale of the property or to award the property in kind to the parties. *Cf. id.* at 119 (awarding the parties' personal property in kind, rather than ordering its sale, based largely on the parties' inability to cooperate). Despite Wife's persistence that she presented sufficient evidence to value the personal property, the trial court clearly disagreed.

¶ 26 Although the distribution method ordered by the trial court is not the most economically efficient, it appears to have been the most amicable means of equitably distributing the parties' personal property.[11]

---

9. Wife relatedly argues that the trial court erred in valuing the Murray residence at its appraised value of $440,000, as opposed to $609,000, which was the value assigned to the property by her witness. We presume the correctness of the trial court's valuation because Wife has failed to marshal the evidence necessary to challenge this factual finding. *See Moon v. Moon*, 1999 UT App 12, ¶ 24, 973 P.2d 431 ("When an appellant fails to meet the heavy burden of marshaling the evidence, we assume that the record supports the

findings of the trial court." (alterations, citations, and internal quotation marks omitted)).

10. This order excepted "each party's personal effects and any property that belongs to any other person, including the children."

11. We note that in its oral ruling, the trial court urged the parties "to reach what probably would be a more acceptable resolution and certainly given . . . how much one can sell some of this property for that [the parties] reach an agree-

*See id.* Neither party provided an itemized list of personal property with value ascribed to each item, nor did they propose an alternative method to divide the property. We conclude the distribution was within the trial court's discretion, and we see no "misunderstanding or misapplication of the law resulting in substantial and prejudicial error ... [n]or such a serious inequity ... as to manifest a clear abuse of discretion" in the court's order. *See Davis v. Davis,* 2003 UT App 282, ¶ 8, 76 P.3d 716 (internal quotation marks omitted).

¶ 27 Similarly, we determine that the trial court did not err in ordering Wife to repay Husband one-half of the mortgage payments made on the Arizona condo prior to trial. Wife acknowledges that the final allocation of the interim payments made on the Arizona condo was explicitly reserved for the trial court to resolve. Nevertheless, Wife argues that the court's final order produced an inequity. Specifically, Wife alleges that the temporary alimony award did not anticipate she would be responsible for paying the Arizona condo mortgage. We see no basis for this assertion. The trial court ordered the reimbursement because Wife "had exclusive use and possession of [the Arizona condo] during that time." We therefore conclude that the property division was sufficiently justified and was well within the trial court's allotted discretion.

## IV. Attorney Fees

¶ 28 Wife contends that the trial court erred in failing to award her at least a portion of her attorney fees because she was the prevailing party in regard to the alimony and property division issues. Wife did not seek an award of attorney fees incurred in resolving custody issues. The trial court de-

nied her request, finding that the affidavits presented were "not specific as to the fees incurred relative to the issue of custody" and were inadequate for determining the reasonableness and necessity of the fees.

¶ 29 While Utah Code section 30–3–3 permits trial courts to award attorney fees in divorce proceedings to either party regardless of who prevails,[12] *see* Utah Code Ann. § 30–3–3(1) (Supp.2008), "'[t]he [ultimate] decision to grant or deny attorney fees is within the trial court's sound discretion.'" *Davis,* 2003 UT App 282, ¶ 9, 76 P.3d 716 (additional internal quotation marks omitted) (quoting *Shinkoskey v. Shinkoskey,* 2001 UT App 44, ¶ 5, 19 P.3d 1005).

¶ 30 Contrary to Wife's assertion, the trial court rejected Wife's request for attorney fees not because it could not determine the amount of attorney fees incurred in the custody dispute, but because it could not determine which fees had been incurred for issues *other than* the custody dispute.[13] Therefore, we find no abuse of discretion in the court's decision that each party should pay his or her own attorney fees.

## CONCLUSION

¶ 31 In sum, we conclude that the amount of Wife's alimony award was within the trial court's discretion and, thus, do not disturb it on appeal. We also affirm the trial court's rulings on the duration of Wife's alimony award as well as its denial of Wife's request for retroactive alimony. We further determine that the trial court did not abuse its discretion in setting aside the parties' real property stipulation, distributing their per-

---

ment for a different kind of division." Accordingly, the court gave the parties sixty days within which to split equitably the personal property; if they were unable, the property was to be sold in its entirety and the proceeds divided equally.

12. Trial courts must base an award of attorney fees "'on evidence of the financial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees.'" *Oliekan v. Oliekan,* 2006 UT App 405, ¶ 30, 147 P.3d 464 (additional internal quotation

marks omitted) (quoting *Wilde v. Wilde,* 969 P.2d 438, 444 (Utah Ct.App.1998)).

13. We note that Husband and Wife spent a significant amount of time and over $100,000 of their liquid, marital assets litigating custody. However, shortly prior to trial the custody issue was settled and, accordingly, the trial was shortened from two weeks to two days. Due to the late resolution of the custody issue, the fees relative only to the issues litigated at trial were difficult to ascertain.

sonal property, or denying Wife's request for attorney fees.

¶ 32 Affirmed.

¶ 33 WE CONCUR: JAMES Z. DAVIS and CAROLYN B. MCHUGH, Judges.