Jennifer L. SANDERSON, Plaintiff and Appellant,

v.

Robert L. TRYON, Defendant and Respondent.

No. 860170.

Supreme Court of Utah.

June 16, 1987.

Bruce Plenk, Salt Lake City, Stephen Julien, Cedar City, for plaintiff and appellant.

Willard Bishop, Cedar City, for defendant and respondent.

HALL, Chief Justice:

This case emanates from a child custody dispute between parents formerly maintaining a polygamous relationship. Jennifer L. Sanderson appeals a district court judgment awarding Robert L. Tryon custody of their three children on the ground that plaintiff was currently and continuingly engaged in the practice of plural marriage.

I

Sanderson and Tryon are the natural parents of three children, two of which were born during the parties' polygamous relationship from June 1975 to April 1982. In April 1982, the parties separated and Sanderson took the children. Their third child was born approximately nine months later. Since the parties were never legally married, no divorce was sought.

After leaving the polygamous relationship with Tryon, Sanderson joined the "Allred Church." This religious group openly taught and engaged in the practice of polygamy. Subsequently, plaintiff unlawfully "married" Bill Bowles; no marriage license was obtained, and Bowles was already living in a polygamous relationship with two other women. Contrastingly, Tryon has apparently abandoned the practice of polygamy since the parties' separation in April 1982.

In November 1982 and June 1983, the trial court entered a judgment and an order based on acknowledgements of paternity executed by Tryon and filed by the parties on behalf of their three children. Thereunder, Tryon was required to pay monthly child support.

In August 1983, Sanderson filed an action seeking custody of the children and increasing defendant's child support obligation. Tryon counterclaimed, also seeking custody of the children.

In April 1985, the matter came to trial. Upon motion of Sanderson's counsel, her complaint was dismissed. Thereafter, the court and counsel agreed that the central issue was "whether children may be taken from an otherwise fit and proper parent solely for the reason that the parent practices plural marriage." The court allowed that issue to be presented by both parties in the form of motions for summary judgment. Subsequently, custody was awarded to defendant.

In February 1986, the trial judge signed and filed findings of fact and conclusions of law which in pertinent part provided:

FINDINGS OF FACT

. . . .

14. [Since May 6, 1983,] Plaintiff and Mr. Bowles have cohabited and continued to cohabit as polygamous husband and wife.

. . . .

26. While the Sanderson/Tryon children attend public schools and otherwise receive proper maintenance and care, *the law presumes that because of their practice of polgamy*, that · Bill Bowles and Jennifer L. Sanderson have each knowingly failed and neglected to provide for the Sanderson/Tryon children the proper maintenance, care, training and education contemplated and required by both law and morals.

27. The Bill Bowles/Jennifer L. Sanderson home in or near Cedar City, Utah, is an immoral environment for the rearing of the Sanderson/Tryon children by reason of its practice of polygamy in violation of Utah state law, and its tolerance and approbation of violation of state law regarding polygamy.

. . . .

29. After the separation of the parties in April of 1982, Defendant Robert L. Tryon was waivering in his adherence to the doctrine of "plural marriage." Defendant has since his separation from Plaintiff in April of 1982 forsaken and abandoned the teaching and practice of plural marriage. . . .

30. The court finds that save and except for the matters already mentioned above, Plaintiff would be a fit and proper custodial parent for the Sanderson/Tryon children. Defendant Robert L. Tryon is a fit and proper person to be awarded the care, custody and control of the Sanderson/Tryon children. *Absent the influence of the doctrine of "plural marriage"*, and in light of the posture of these proceedings, the court *makes no finding concerning whether the best interests of the children would be served by leaving them with Plaintiff or be [sic] awarding their custody to Defendant.*

31. Primary bonding of the children has occurred with Plaintiff, their mother. Nevertheless, both the public welfare and the welfare of the Tryon children, . . . require that the right of custody and control of said children be removed from Jennifer L. Sanderson and awarded to and place [sic] in Defendant [Robert] L. Tryon.

. . . .

CONCLUSIONS OF LAW

1. The care, custody and control of the Sanderson/Tryon children should be removed from Plaintiff Jennifer L. Sanderson and placed in the awarded [sic] to Defendant Robert L. Tryon, subject to reasonable rights of visitation in Plaintiff, said rights of reasonable visitation to be restricted in that Plaintiff should not be permitted to exercise visitation with the children in the presence of Bill Bowles, her polygamous "husband," or overnight in the presence of any unrelated, adult member of the opposite sex, to whom she is not legally and lawfully married.

(Emphasis added.)

No specific finding was made as to the relative parenting abilities of the parties or the best interests of the children. Sanderson argues that the finding that she practices polygamy is alone insufficient to support the custody award or to permit meaningful review on appeal. We agree.

II

 Utah Code Ann. § 30–3–10 (1984) provides: [1]

Custody of Children. In any case of separation of husband and wife having minor children, or whenever a marriage is declared void or dissolved, the court shall make such order for the future care and custody of the minor children as it

**1.** Once a child has been legitimated in accordance with Utah Code Ann. § 78–30–12 (1977), visitation and custody disputes between parents of that child are governed by the statutes on divorce. *See Chandler v. Mathews,* 734 P.2d 907, 909 (Utah 1987) (per curiam); *Lembach v. Cox,* 639 P.2d 197, 199 (Utah 1981), *overruled on other grounds, Pusey v. Pusey,* 728 P.2d 117, 119 (Utah 1986); *Slade v. Dennis,* 594 P.2d 898, 901

(Utah 1979). Although in their briefs on appeal Sanderson calls herself the custodial parent and Tryon refers to the action below as one concerning a change in custody, the record is void of any previous determination of custody. Accordingly, we apply the standard in section 30–3–10 in lieu of the standard for change of custody outlined in *Hogge v. Hogge,* 649 P.2d 51 (Utah 1982), and its progeny.

may deem just and proper. In determining custody, the court shall consider the *best interests of the child and* the past conduct and demonstrated moral standards of each of the parties. The court may inquire of the children and take into consideration the children's desires regarding the future custody; however, such expressed desires shall not be controlling and the court may, nevertheless, determine the children's custody otherwise.

(Emphasis added.)

■ This statute was amended in 1969, deleting a provision which permitted awarding custody to the father upon finding that the mother was *immoral,* incompetent, or otherwise an improper person.[2] As written, this section now requires that in determining custody, courts consider the *best interests of the child and* the past conduct and demonstrated moral standards of the parties.[3] Accordingly, we have previously held:

> [I]f our review of custody determination is to be anything more than a superficial exercise of judicial power, the record on review must contain written findings of fact and conclusions of law by the trial judge which specifically set forth the reasons, based on those numerous factors which must be weighed in determining "the best interests of the child," and which support the custody decision.... [T]he factors relied on by the trial judge in awarding custody must be articulable and articulated in the judge's written findings and conclusions.[4]

In short, a custody decision must be supported by written findings and conclu-

sions.[5] These findings should refer to the specific factors pertinent to the decision of what placement is in the best interests of the child, "including the particular needs of [each] child and the ability of each parent to meet those needs." [6]

In the instant case, the court found that defendant Tryon was a fit and proper person to be awarded custody and that plaintiff Sanderson would be a fit and proper person to be awarded custody except that she continues to live in a plural marriage relationship. Moreover, the court specifically stated that it made no findings regarding whether the best interests of the children would be served by leaving them with Sanderson or awarding custody to Tryon, "absent the influence of ... 'plural marriage.'" Therefore, except for Sanderson's practice of polygamy, there were no findings to support the conclusion that Tryon's custody would best serve the children's interests; nor were there findings of fact "which deal with one parent or the other being the better, more nurturing parent." [7]

Nevertheless, Tryon relies upon this Court's decision in *In re Black* [8] to argue that the finding that plaintiff practices polygamy is sufficient to support his custody award. We are not persuaded.

■ First, the instant case is distinguishable from the decision in *Black. Black* involved the termination of parental rights. Therein, this Court addressed the issue of whether the parents' practice of a polygamous lifestyle justified the trial court's determination that the children were "neglected" as that term was defined in Utah Code Ann. § 55–10–6 (1953). In the plurali-

2. *See* Utah Code Ann. § 30–3–10 (1953) *amended by* Family Court Act, ch. 72, § 7, 1969 Utah Laws 327, 330.

3. Utah Code Ann. § 30–3–10 (1984); *see also Fontenot v. Fontenot,* 714 P.2d 1131, 1132 (Utah 1986) (per curiam); *Lembach,* 639 P.2d at 199–200.

4. *Smith v. Smith,* 726 P.2d 423, 425–26 (Utah 1986) (citations omitted).

5. *Smith,* 726 P.2d at 426 (citing Utah R.Civ.P. 52(a); *Hutchison v. Hutchison,* 649 P.2d 38, 42 (Utah 1982)).

6. *Martinez v. Martinez,* 728 P.2d 994, 995 (Utah 1986) (per curiam) (citing *Smith,* 726 P.2d at 425–26; *Hutchison,* 649 P.2d at 41–42).

7. *Lembach,* 639 P.2d at 202 (Stewart, dissenting); *see also Smith,* 726 P.2d at 426; *Martinez,* 728 P.2d at 994–95.

8. 3 Utah 2d 315, 283 P.2d 887 (plurality opinion), *cert. denied,* 350 U.S. 923, 76 S.Ct. 211, 100 L.Ed. 807 (1955).

ty opinion, this Court affirmed that parental rights should be terminated pursuant to section 55–10–32 because the parents through their polygamous lifestyle had neglected to provide the proper maintenance, education, and training required by law and morals.[9] However, the standard governing actions for termination of parental rights is not applicable to child custody disputes.[10]

Second, when *Black* was decided in 1955, section 55–10–32 provided:

> No child as defined in this chapter shall be taken from the custody of its parents or legal guardian without the consent of such parents or legal guardian, unless the court shall find from the evidence introduced in the case that such parent or legal guardian is incompetent, or has knowingly failed and neglected to provide for such child the proper maintenance, care, training, and education contemplated and *required by both law and morals*....[11]

This section was repealed in 1965, and under the current provision in section 78–3a–48, moral references have been deleted from the grounds for termination of parental rights.[12] Therefore, the trial judge improperly utilized this language and standard from *Black* in developing his findings. Accordingly, the analysis and ruling in *Black* do not apply.

 Finally, a determination of the children's best interests turns on numerous factors, each of which may vary in importance according to the facts in the particular case.[13] Moral character is only one of a myriad of factors the court may properly consider in determining a child's best interests.[14] In this regard, we have previously held that a parent's extra-marital sexual

relationship alone is insufficient to justify a change in custody.[15] Accordingly, we similarly hold that the trial court's finding that a parent practices polygamy is alone insufficient to support a custody award or to permit meaningful review on appeal.[16] Instead, Sanderson's polygamous practices should only be considered as one among many other factors regarding the children's best interests.

### III

In conclusion, the findings of fact are inadequate since they simply do not demonstrate a rational factual basis for the ultimate decision by reference to pertinent factors that relate to the best interests of the children, including specific attributes of the parents. Accordingly, we vacate the order entered below and remand this case to the district court to enter further findings of fact and judgment in accordance with this opinion.

HOWE and DURHAM, JJ., concur.

STEWART, Associate C.J., concurs in the result.

ZIMMERMAN, J., having disqualified himself, does not participate herein.

**9.** 3 Utah 2d at 346, 283 P.2d at 909.

**10.** *Cf. Hutchison,* 649 P.2d at 40 (citing Utah Code Ann. § 78–3a–48(1)(a) (1965); *In re J.P.,* 648 P.2d 1364 (Utah 1982)).

**11.** Utah Code Ann. § 55–10–32 (1953).

**12.** *See* Utah Code Ann. § 78–3a–48 (1986).

**13.** *Fontenot,* 714 P.2d at 1132.

**14.** *Hutchison,* 649 P.2d at 41; *see also Fontenot,* 714 P.2d at 1133.

**15.** *Fontenot,* 714 P.2d at 1132 (citing *Shioji v. Shioji,* 712 P.2d 197 (Utah 1985)); *Stuber v. Stuber,* 121 Utah 632, 637, 244 P.2d 650, 652 (1952).

**16.** By our determination in this case, we do not minimize the importance of a positive, constructive, moral, and emotional home environment as one factor to be considered in custody matters. *Fontenot,* 714 P.2d at 1133.