**Debra LINAM, Plaintiff and Appellee,**

v.

**Edwin KING, Defendant and Appellant.**

**Case No. 900034–CA.**

Court of Appeals of Utah.

Jan. 16, 1991.

missals.

Earl S. Spafford, L. Charles Spafford (argued), Spafford & Spafford, Salt Lake City, for defendant and appellant.

Brent H. Bartholomew (argued), Utah Legal Services, Inc., Provo, for plaintiff and appellee.

Before BENCH, BILLINGS and GREENWOOD, JJ.

## OPINION

BENCH, Judge:

Appellant, Edwin King, appeals the trial court's order awarding custody of the parties' minor child, A., to appellee, Debra Linam. We vacate the order and remand for a redetermination of custody.

King and Linam lived together as an unmarried couple for more than five years. Their daughter, A., was born in March 1985, and King acknowledged paternity shortly thereafter. Although A. was the only child of King and Linam, Linam had

three other children from previous relationships.

■ In 1988, King and Linam separated. A. lived with Linam and Linam's other children in Sanpete County, Utah, and King exercised reasonable visitation. In February 1989, King visited A. and took her to his home in Salt Lake City without Linam's consent. According to King, he did not return A. when she disclosed that her eleven-year-old half-brother, D., had sexually molested her. The Division of Family Services ("DFS"), was notified and an investigation into the abuse was initiated by a Salt Lake City DFS social worker. A pick-up order for A. was issued by the trial court, and A. was returned to Linam in March. The parties stipulated that temporary custody of A. be granted to Linam until a permanent custody determination was made.[1]

In April 1989, a hearing was held on the issue of who should be awarded permanent custody. The trial court heard testimony from several witnesses including King and Linam. Linam alleged King had sexually abused A., and King alleged that Linam's boyfriend as well as Linam's minor son, D., both of whom lived with Linam and A., had sexually abused A. King also alleged that Linam had neglected A. by not providing adequate medical care.

The trial court found no evidence of abuse and awarded permanent custody to Linam, with reasonable visitation for King. King then filed an ex parte motion which the trial court granted, extending the time period in which King could file a motion for a new trial. King's motion for a new trial was ultimately denied by the trial court. On appeal, King asserts (a) the trial court erred in finding that A. had not been sexually abused by her half-brother, and (b) the court abused its discretion in awarding custody to Linam.

## VALIDITY OF THE APPEAL

Linam argues this court cannot review the trial court's findings of fact or its ultimate ruling because this court lacks jurisdiction and because King failed to marshal the evidence on appeal. Contrary to Linam's assertions, the appeal is properly before this court.

■ Linam has previously made her jurisdictional arguments to this court through a motion to dismiss this appeal. This court's law and motion panel heard and denied her motion. Under a law-of-the-case analysis, we will not revisit that issue. *Conder v. A.L. Williams & Assocs.*, 739 P.2d 634, 636 (Utah Ct.App.1987) (prior denial of motion is law of the case).

■ As to the marshaling requirements, this court has indeed held that an appellant who challenges a trial court's factual finding must marshal all the evidence that supports the finding and then show that the finding is nevertheless "against the great weight of the evidence." *Merriam v. Merriam*, 799 P.2d 1172, 1176 (Utah Ct.App. 1990); *In re M., D.*, 790 P.2d 562, 567 (Utah Ct.App.1990). King has adequately "marshaled the evidence" on appeal.[2] We will therefore proceed to the merits of King's arguments.

## OUR REVIEW OF CUSTODY DETERMINATIONS

■ Trial courts are given broad discretion in child custody matters. To ensure that a trial court acted within its broad discretion, it is essential that those considerations behind a custody determination be articulated in clear factual findings. *Jensen v. Jensen*, 775 P.2d 436, 438 (Utah Ct.App.1989); *Painter v. Painter*, 752 P.2d 907, 909 (Utah Ct.App.1988). We will not upset a custody determination that is "consistent with the standards set by appellate courts, and are supported by adequate findings of fact and conclusions of law." *Dee-*

1. Custody disputes between A.'s parents are governed by the applicable statutes on divorce, even though her parents were never married. *See Sanderson v. Tryon*, 739 P.2d 623, 625 n. 1 (Utah 1987); *Lembach v. Cox*, 639 P.2d 197, 199 (Utah 1981).

2. For cases where this court has determined the marshaling requirement was not met, *see In re M., D.*, 790 P.2d at 567; *Riche v. Riche*, 784 P.2d 465, 468 (Utah Ct.App.1989).

**1238**

*ben v. Deeben,* 772 P.2d 972, 973 (Utah Ct.App.1989); *Riche v. Riche,* 784 P.2d 465, 467 (Utah Ct.App.1989). Findings of fact that are "clearly erroneous" must, however, be set aside. *Marchant v. Marchant,* 743 P.2d 199, 202 (Utah Ct.App.1987) (citing Utah R.Civ.P. 52(a)); *Jensen,* 775 P.2d at 438.

### FINDING OF "NO ABUSE"

█ A core issue before the trial court was whether A. had been sexually abused, and if so, by whom. Utah Code Ann. § 30-3-5.2 (1989) provides, with our emphasis:

When, in any divorce proceeding or upon a request for modification of a divorce decree, *an allegation of child abuse or child sexual abuse is made, implicating either party, the court shall order that an investigation be conducted by [DFS]. A final award of custody may not be rendered until a report on that investigation is received by the court.* That investigation shall be conducted by [DFS] within 30 days of the court's notice and request of an investigation.

Evidence presented by DFS regarding whether or not A. had been sexually abused was disregarded by the trial court. While the evidence failed to establish that there had been abuse by King or Linam's live-in boyfriend, there was substantial evidence indicating that A. had been sexually abused by her half-brother, D. Nevertheless, the trial court specifically found that "[t]he parties' minor child has not been sexually, nor otherwise, abused by anyone." That finding is against the clear weight of the evidence.

David Lindblom, a social worker with DFS in Sanpete County, testified he had investigated several referrals concerning A. The first, in February 1989, was a referral alleging possible sexual abuse of A. by D. According to Lindblom, that investigation was inconclusive. The second referral, in August 1989, also involved allegations of sexual abuse of A. That investigation resulted in a finding that A. had been sexually abused by D. The third referral, in September 1989, when Linam was

arrested in connection with a burglary, concerned who would care for her children while she was in jail. Lindblom further testified he arranged for D. to begin therapy with a social worker who specialized in treating perpetrators, and that the status of the case at the time of trial was "pending," meaning DFS had not closed the case. Upon examination by the court, Lindblom admitted he never personally found any abuse, and that his conclusions were based on information received from medical and mental health professionals.

Kraig Parry, a protective services investigator for DFS, testified he became involved with the case in March 1989. Parry was notified by a Salt Lake City social worker that there had been an investigation into possible sexual abuse of A. When A. was returned to Sanpete County, and back in Linam's custody, Parry followed up on the allegations. Parry testified he had concluded that D. had sexually abused A. When questioned by the court, Parry said his determination was based on a report of a physical examination of A. and on an assessment from a clinical social worker. Linam and King both stipulated that these witnesses were experts in their field.

Dr. William M. Palmer, a member of the child abuse and treatment team at Primary Children's Hospital in Salt Lake City, interviewed and examined A. His pediatric report was entered into evidence. The report concluded: "It seemed fairly clear D. had been sexually inappropriate with A." Dr. Palmer also reported he had concerns about Linam maintaining custody of A.

Diane Owens was the Salt Lake City DFS clinical social worker who initiated the examination by Dr. Palmer. Her case notes were admitted into evidence. The case notes also indicated that there was evidence that D. had sexually abused A.

Our reading of the record as a whole compels us to conclude that the finding of no abuse, sexual or otherwise, is clearly erroneous. We cannot say that absent the trial court's erroneous finding of no sexual abuse of A., the outcome of the custody proceedings would have been the same. Therefore, we cannot conclude that the tri-

al court's findings demonstrate a rational factual basis for the ultimate decision.[3] We therefore remand for a redetermination of custody.

## DETERMINING CUSTODY

Utah Code Ann. § 30–3–10 (1989) requires a court to consider "the best interests of the child and the past conduct and demonstrated moral standards of each of the parties" in making a custody determination. *Moon v. Moon*, 790 P.2d 52, 54 (Utah Ct.App.1990). Case law has established several factors a trial court should consider in determining the "best interests" of the child:

> The need for stability in custodial relationship and environment; maintaining an existing primary custodial bond; the relative strength of parental bonds; the relative abilities of the parents to provide care, supervision, and a suitable environment for the children and to meet the needs of the children; preference of a child able to evaluate the custody question; the benefits of keeping siblings together, enabling sibling bonds to form; the character and emotional suitability of the custodian; and the desire for custody and the apparent commitment of the proposed custodian to parenting.

*Moon*, 790 P.2d at 54 (footnotes omitted).

■ A trial court may also consider other relevant factors including such things as the sexual conduct of one party, *Merriam*, 799 P.2d at 1176–78; the instability and lack of supervision in one household, *Er-*

*win v. Erwin*, 773 P.2d 847, 848 (Utah Ct.App.1989); and evidence of child abuse, *Baker v. Vidal*, 363 S.W.2d 158 (Tex.Civ. App.1962) (evidence that minor girls had been sexually abused while in mother's care required change of custody to father).

■ In making its decision regarding custody in this case, the trial court considered some of the relevant factors outlined above.[4] However, in light of the fact that A. was sexually abused by her half-brother while in the custody of Linam, and in light of the trial court's failure to adequately address this factor in its previous findings, the trial court should reconsider on remand the weight it attributed to these various factors.

■ The trial court should also consider a recommendation from an independent evaluator in making its custody determination. King and Linam stipulated to a request for an independent evaluation as to custody. There is nothing in the record to indicate that such an evaluation was performed. Rule 4–903(2), Utah Code of Judicial Administration (1990), permits an evaluator to submit a written report to the court, thereby contemplating the use of such a report by a trial court in child custody determinations. *Merriam*, 799 P.2d at 1174–75; *Erwin*, 773 P.2d at 848.

## CONCLUSION

We reverse the trial court's finding that A. had not been sexually abused, and re-

---

3. *Compare Smith v. Smith*, 726 P.2d 423, 426 (Utah 1986) (trial court's findings were inadequate in that the court considered such factors as mother's remarriage very soon after divorce, and her original willingness to leave the child in father's temporary custody); *Sanderson v. Tryon*, 739 P.2d 623, 626–27 (Utah 1987) (trial court's findings of fact were inadequate since mother's polygamous lifestyle was primary basis for custody award to father); *Marchant v. Marchant*, 743 P.2d 199, 203 (Utah Ct.App.1987) (trial court's findings were "flavored with bias against divorced women, an urban environment, and women who pursue other than the traditional role of homemaker"); *Moye v. Moye*, 102 Idaho 170, 627 P.2d 799 (1981) (abuse of discretion by trial court where court overem-

phasized one factor in its consideration of custody award).

4. Factors such as which parent had been the primary caretaker of A., and the importance of keeping siblings together were considered by the trial court. We have previously stated that the identity of the primary caretaker is "[p]rominent, although not dispositive." *Deeben*, 772 P.2d at 973. The role of primary caretaker, however, must be put into appropriate context. *Id.* at 974. As to a preference for keeping siblings together whenever possible, that preference is not binding in the face of considerations dictating a contrary course of action. *Id.* at 973; *Merriam*, 799 P.2d at 1178.

mand the case to the trial court for a redetermination of custody. In reevaluating what custody award will be in A.'s "best interests," the trial court should consider an independent custody evaluation, and the relevant factors outlined herein.

The custody order is vacated and the case is remanded for a redetermination of custody and entry of appropriate findings.

BILLINGS and GREENWOOD, JJ., concur.