**Charlene D. HINCKLEY, Plaintiff and Appellee,**

v.

**Howard D. HINCKLEY, Defendant and Appellant.**

No. 900305–CA.

Court of Appeals of Utah.

Aug. 14, 1991.

James R. Brown (argued), Jennie B. Huggins, Jardine, Linebaugh, Brown & Dunn, Salt Lake City, for defendant and appellant.

Nicolaas deJonge (argued), Salt Lake City, for plaintiff and appellee.

Before BENCH, GARFF and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Howard Hinckley appeals from an order denying his petition for reduction or termination of alimony. He further appeals the trial court's refusal to reduce his past alimony payments by one half of Charlene Hinckley's net earnings for the years 1981 through 1989. We affirm.

## FACTS

Charlene Hinckley was granted a decree of divorce from Howard Hinckley on November 20, 1980. The decree ordered Mr. Hinckley to pay $1,200 per month in alimony to Mrs. Hinckley, reduced by one half of Mrs. Hinckley's net monthly income from her employment.

At the time of divorce, Mrs. Hinckley was unemployed. The divorce decree granted her the parties' home, a duplex and various items of personal property. Mr. Hinckley was awarded two commercial buildings, an apartment building and a vacant lot, as well as two barber shops. The barber shops have been operated by Mr. Hinckley since the divorce. In 1984, Mr. Hinckley started a sun tanning business, which required him to purchase tanning beds and related equipment. Currently, Mr. Hinckley receives income from his barber shops, rental properties, and tanning salon.

On March 10, 1989, Mr. Hinckley filed a petition to reduce or terminate alimony. In November 1989, he unilaterally discontinued making alimony payments to Mrs. Hinckley, and Mrs. Hinckley filed a counterclaim for non-payment of alimony. In March 1990, the matter was heard by the court below.

In a memorandum decision, the trial court: (1) denied Mr. Hinckley's petition to reduce or terminate alimony, (2) ruled that Mr. Hinckley had waived his right to have his past alimony payments reduced by one half of Mrs. Hinckley's net earnings for the years 1981 through 1989, (3) awarded Mrs. Hinckley a judgment against Mr. Hinckley for unpaid alimony through March 1990 in the amount of $6,000, and (4) ordered the original decree of divorce to be enforced in the future according to its terms.

## ISSUES

Mr. Hinckley claims that the trial court: (1) abused its discretion by denying his petition to reduce or terminate alimony based on a substantial change in circumstances, and (2) erred by holding that he had waived his right to reduce his past alimony payments by one half of Mrs. Hinckley's earnings for the years 1981 through 1989. Mrs. Hinckley claims that Mr. Hinckley's appeal is frivolous and that sanctions should be imposed accordingly.

## STANDARD OF REVIEW

We will not disturb the trial court's findings of fact, unless such findings are clearly erroneous. *Hagan v. Hagan*, 810 P.2d 478, 481 (Utah App.1991) (citing *Jense v. Jense*, 784 P.2d 1249, 1251 (Utah App. 1989)). Findings of fact will be regarded as clearly erroneous only if they are "so lacking in support as to be against the clear weight of the evidence[.]" *Id.* (quoting *In re Estate of Bartell*, 776 P.2d 885, 886 (Utah 1989)). "We will not disturb the trial court's decision as to modification of a divorce decree absent an abuse of discretion." *Id.* (citing *Myers v. Myers*, 768 P.2d 979, 984 (Utah App.1989)).

## SUBSTANTIAL CHANGE IN CIRCUMSTANCES

Mr. Hinckley argues that the trial court abused its discretion by denying his petition to reduce or terminate alimony because there has been a substantial change in circumstances. In support of this claim, he argues that Mrs. Hinckley has obtained employment and increased her income, while his own income has decreased.

■ "To obtain a modification of a divorce decree, the movant must show a substantial change of circumstances subsequent to the decree, *that was not originally contemplated within the decree itself.*" *Jense v. Jense*, 784 P.2d 1249, 1251 (Utah App.1989) (emphasis added) (citing *Woodward v. Woodward*, 709 P.2d 393, 394 (Utah 1985) (per curiam)). The original divorce decree provided that Mr. Hinckley's alimony payments be reduced by one half of Mrs. Hinckley's net monthly income from her employment. This provision indicates that the parties did contemplate the possibility of Mrs. Hinckley obtaining employment, and that any income she receives will directly affect the amount of alimony paid by Mr. Hinckley. Therefore, the fact that Mrs. Hinckley obtained employment cannot constitute a substantial change in circumstances.

■ Nor do the facts support Mr. Hinckley's claim that his income has decreased. At the time of divorce, Mr. Hinckley's income, as reported on the Hinckleys' 1979 federal income tax return, was $34,852. Mr. Hinckley claims that his income is far below the level it was in 1979, and therefore, he is entitled to a reduction or termination of alimony.

Although it is true that Mr. Hinckley's reported taxable income from 1986 to 1988 is less than at the time of his divorce, the circumstances surrounding this decrease do not support viewing it as a substantial change in circumstances because these figures do not accurately reflect Mr. Hinckley's financial situation. Mr. Hinckley's reported taxable income for the years 1986, 1987, and 1988 was $15,120, $21,244, and $23,186, respectively. However, this decrease is largely due to an investment Mr.

Hinckley made in tanning salon equipment, which allowed him to write off as a business expense at least $27,600 a year over this three year period. At trial, Mr. Hinckley testified that he no longer owes on this investment. In fact, Mr. Hinckley's testimony indicated that his gross income increased from $92,146 in 1988 to $102,000 in 1989. Thus, on the facts of this case, it would be absurd to allow Mr. Hinckley to reduce his alimony payments on the basis that his income decreased due to his investment in tanning salon equipment which is presently producing income for him. Additionally, we are not bound by Mr. Hinckley's allocation of business income in determining whether he is still able to pay alimony. *Jones v. Jones*, 700 P.2d 1072, 1076 (Utah 1985). Accordingly, we find that the record supports the trial court's conclusion that there has been no material change in circumstances justifying a reduction of alimony.

## WAIVER OF RIGHT TO REDUCE PAST ALIMONY

■ Mr. Hinckley also contends that the trial court erred in finding that he had voluntarily waived his right to reduce his alimony payments by one half of Mrs. Hinckley's net earnings for the years 1981 through 1989.

Waiver is "the intentional relinquishment of a known right." In order for waiver to occur, "there must be an existing right, benefit or advantage, a knowledge of its existence, and an intention to relinquish it." "The party's actions or conduct must evince unequivocally an intent to waive, or must be inconsistent with any other intent." "Whether a right has been waived is generally a question of fact and therefore we accord considerable deference to the finder of fact's determination."

*Mont Trucking v. Entrada Indus.*, 802 P.2d 779, 781 (Utah App.1990) (quoting *Barnes v. Wood*, 750 P.2d 1226, 1230 (Utah App.1988)). In order to find waiver in the present case, it must be shown that Mr. Hinckley had a right to the reduction, that

he was aware of such right, and that he intentionally relinquished that right.

The parties agree that, by the terms of the original divorce decree, Mr. Hinckley was entitled to have his alimony payments reduced by one half of Mrs. Hinckley's net monthly income. The parties also agree that Mr. Hinckley was aware of this right. Therefore, our examination centers on whether the trial court's finding that he intentionally relinquished such right is clearly erroneous.

The trial court found that Mr. Hinckley had actual knowledge that Mrs. Hinckley was employed, that he took no action to reduce the alimony payments pursuant to the divorce decree, and that therefore, Mr. Hinckley, by his words and actions, waived his right to have his alimony payments reduced.

Our review of the record indicates that this finding is well supported by the evidence. Mrs. Hinckley testified that Mr. Hinckley knew she was working and that they often discussed her employment. She also testified that, prior to December 1989, Mr. Hinckley had not inquired to find out how much money she was making, nor had he inquired about being repaid for any amount due him. Additionally, the Hinckleys' daughter testified that on one occasion, Mr. Hinckley withheld $200 of child support and told her that Mrs. Hinckley owed him money and that, as far as he was concerned, they were now even. Relying on this statement, and on Mr. Hinckley's inaction, Mrs. Hinckley assumed that Mr. Hinckley would continue to pay the full monthly alimony of $1,200. Consequently, in reliance on this $1,200 a month as part of her monthly budget, Mrs. Hinckley sold the duplex she had been awarded in the divorce in order to finance some repairs and remodeling of her home. On the other hand, at trial and in his deposition, Mr. Hinckley testified that he had, on occasion, asked Mrs. Hinckley if she was employed, but that at those times she was either unemployed or between jobs. However, Mr. Hinckley also testified that he knew Mrs. Hinckley was employed, but "just let

it go." All of these facts support the trial court's finding of waiver. Thus, Mr. Hinckley has not demonstrated that the trial court's finding of waiver is against the clear weight of the evidence, and accordingly, we affirm.

## NON–COMPLIANCE WITH APPELLATE RULES

■ Mrs. Hinckley seeks attorney fees and costs under Utah R.App.P. 33(a), which provides that "if the court determines that a motion made or appeal taken under these rules is either frivolous or for delay, it shall award just damages, which may include ... costs ... and/or reasonable attorney fees, to the prevailing party."

However, her brief contains only one sentence regarding attorney fees and costs with no citations to the record, no legal authorities and no analysis whatsoever. "The argument shall contain the contentions and reasons of the appellant with respect to the issues presented, with citations to the authorities, statutes, and parts of the record relied on." Utah R.App.P. 24(a)(9). A mere request in the brief or assertion by counsel at the hearing does not satisfy this requirement. "Due to non-compliance with our briefing rule, we decline to address this issue[.]" *English v. Standard Optical Co.*, 814 P.2d 613, 618–19 (Utah App.1991) (citations omitted). Consequently, we do not award attorney fees or costs to Mrs. Hinckley.

■ Moreover, even had Mrs. Hinckley properly presented this issue, this court has previously held that "sanctions for frivolous appeals should only be applied in egregious cases, lest there be an improper chilling of the right to appeal erroneous lower court decisions." *Porco v. Porco*, 752 P.2d 365, 369 (Utah App.1988). Utah R.App.P. 33(b) defines a frivolous appeal as "one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." The appeal in this case is not frivolous inasmuch as both the change in circumstances claim and the waiver claim had some merit and a reason-

able legal basis. Therefore, we decline to award attorney fees or costs on appeal.

## CONCLUSION

In conclusion, the trial court did not abuse its discretion in holding that there had been no substantial change in circumstances which would justify modifying the alimony provision of the original divorce decree. Additionally, the trial court's finding of waiver as to the issue of reducing past alimony by Mrs. Hinckley's earnings for the years 1981 through 1989 was not clearly erroneous. Accordingly, we affirm the trial court's decision in its entirety.

BENCH and GARFF, JJ., concur.