Paul Edward ROBERTS, Plaintiff
and Appellant,

v.

Sheri Lynn ROBERTS, Defendant
and Appellee.

No. 910099–CA.

Court of Appeals of Utah.

May 28, 1992.

Ephraim H. Fankhauser, Salt Lake City, for plaintiff and appellant.

Richard S. Nemelka, Salt Lake City, for defendant and appellee.

Before GARFF, JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

Plaintiff-appellant Paul Edward Roberts (Husband) appeals from a divorce decree awarding custody of the parties' minor children to defendant-appellee Sheri Lynn Roberts (Wife) and also contests the property distribution and finding of his gross income for computing child support. Wife cross appeals, contesting the distribution of debts, alimony award, and attorney fees. We remand for findings and conclusions regarding the custody and alimony awards and affirm on all other issues.

## BACKGROUND

Following a marriage marked by at least one earlier separation and considerable strife, Husband filed a complaint for divorce on January 8, 1990 and petitioned the court for an order granting him temporary custody of the parties' two minor children, who were then ages five and four.

On January 9, a court employee mistakenly stamped the judge's signature on the original order to show cause and order granting Husband temporary custody. This temporary order was later set aside as improperly executed. The judge promptly signed a properly executed order granting Husband temporary custody until the commissioner held a hearing on the matter. At the hearing on February 5, the commissioner recommended that Husband have temporary custody and temporary use of the home, and that an evaluator who was mutually acceptable to both parties perform a custody evaluation. Wife filed an objection pursuant to Rule 6–401(4) of the Utah Rules of Judicial Administration and requested an evidentiary hearing on the matter. On March 2, the trial court conducted a nonevidentiary hearing, in which it affirmed the commissioner's recommendations. Husband thus had temporary custody approximately eleven months prior to trial.

At trial, Husband presented evidence of his gross income and professed that the figure was high, but assented to using the figure to calculate child support. The court admitted evidence of Husband's method of obtaining temporary custody, as relevant to the custody issue. Each party testified to the other's infidelity, ill temper, and self-centered behavior. Each largely denied the other's allegations regarding his or her behavior. Wife testified that Husband had physically abused her. Husband denied the allegation of abuse. Wife also presented evidence that six months after the commencement of the divorce action, Husband had asked for women's phone numbers at a bar and then asked for his money back on the drinks he had bought them when they did not respond. Husband denied the allegation. Husband presented evidence that on January 4, 1990, directly before he filed for divorce, he found Wife engaged in a sexual act with another man in a car at the ZCMI parking terrace. Husband admitted that later that day he struck Wife in the face, breaking her nose. In short, the testimonial evidence was hotly disputed.

The court-ordered evaluator testified in support of her report. In her report she stated that both parents were motivated to receive custody, were sensitive to the children, were inclined to see themselves in a very favorable light, free from anxiety and depression, and had a reputation for yelling at the children. The evaluator identified Wife as the primary caretaker before the separation, but recommended that the children should be kept together, and that custody should remain with Husband. She based this recommendation on her opinion that Husband had a stronger parent-child bond, that Husband felt a stronger sense of responsibility for the children, and that Husband was more inclined to orient his life to accommodate the children's needs.

In addition to the court-ordered evaluation, the court heard the testimony of three expert witnesses: a family counselor, a psychologist, and a social worker, who all testified in Wife's behalf regarding the strength of her bond with the children. These witnesses did not make custody recommendations or submit reports complying with the requirements for Uniform Custody Evaluations. The trial court awarded custody to Wife, entering its decree of divorce on December 3, 1990. Husband then filed motions for a new trial and to alter or amend the decree, asserting essentially the same issues he asserts on appeal. The court denied the motions on all issues.

On appeal, Husband challenges the court's custody grant, distribution of property, determination of his gross income for calculating child support, and failure to impose sanctions on Wife. Wife cross appeals, claiming that the court erred in denying her a full evidentiary hearing to determine temporary custody and that the statutory procedure for determining temporary custody is unconstitutional.[1] She also challenges the distribution of debts and the alimony award, and requests attorney fees both at trial and on appeal.

## CUSTODY

■ Husband contends that the trial court's custody determination was not supported by adequate findings of fact and conclusions of law. He further asserts that the evidence was insufficient to support the findings and that the court abused its discretion in granting Wife custody of the two minor children. Our threshold consideration on review is whether the court's findings and conclusions are adequate. "In cases tried to the bench, the court is required to 'find the facts specially' and thus ground its decision on findings of fact which resolve the material factual uncertainties and are expressed in enough detail to enable a reviewing court to determine whether they are clearly erroneous." *Erwin v. Erwin*, 773 P.2d 847, 848–49 (Utah App.1989) (quoting Utah R.Civ.P. 52(a)). "[T]o ensure the court acted within its broad discretion, the facts and reasons for the court's decision must be set forth fully in appropriate findings and conclusions." *Painter v. Painter*, 752 P.2d 907, 909 (Utah App.1988) (citations omitted); *accord Linam v. King*, 804 P.2d 1235, 1237 (Utah App.1991). These findings must be adequate to ensure on appeal " 'that the trial court's discretionary determination was rationally based.' " *Painter*, 752 P.2d at 909 (quoting *Martinez v. Martinez*, 728 P.2d 994, 994 (Utah 1986)). Specificity of findings is particularly important in custody determinations. This is so because the issues involved are highly fact sensitive.[2]

■ We will not disturb a trial court's custody determination if it is consistent

---

1. Regarding these assertions, we believe denial of an evidentiary hearing on a temporary order could be cause for concern in some circumstances. However, because we are remanding for findings on the custody issue, we find it unnecessary to decide the constitutional question at this time.

2. *Cf. State v. Ramirez*, 817 P.2d 774, 788 (Utah 1991) (when issues are highly fact sensitive, detailed findings are necessary to a meaningful review); *Woodward v. Fazzio*, 823 P.2d 474, 477–78 (Utah App.1991) (when findings are inadequate to disclose the basis for the decision, we do not reach the question of whether evidence is sufficient to support the findings); *Adams v. Board of Review of the Indus. Comm'n*, 821 P.2d 1, 6 (Utah App.1991) (we cannot assume subsidiary findings when the evidence shows "several possible configurations" of factual findings).

with the standards set by appellate courts and supported by adequate findings of fact and conclusions of law. *Paryzek v. Paryzek*, 776 P.2d 78, 83 (Utah App.1989). The legal standards applied by the appellate courts are based on Utah Code Ann. § 30-3-10(1) (1989), which requires the trial court to "consider the best interests of the child and the past conduct and demonstrated moral standards of each of the parties." The appellate courts have emphasized a number of "function related" factors as criteria for the trial court to consider in determining which custody arrangement will meet the minor child's best interests.[3] Unlike support and alimony determinations, which can be made by relatively simple quantitative analysis, there is no checklist of custody factors, since "[t]hese factors are highly personal and individual, and do not lend themselves to the means of generalization employed in other areas of the law." *Moon v. Moon*, 790 P.2d 52, 54 (Utah App.1990). Consequently, when custody is contested and evidence presents several possible interpretations, a bare conclusory recitation of factors and statutory terms will not suffice. We must have the necessary supporting factual findings linking those factors to the children's best interests and each parent's abilities to meet the children's needs. *See Painter*, 752 P.2d at 909.

> [I]f our review of custody determinations is to be anything more than a superficial exercise of judicial power, the record on review must contain written findings of fact and conclusions of law by the trial judge which specifically set forth the reasons, based on those numerous factors which must be weighed in determining the "best interests of the child," and which support the custody decision.

**3.** These factors include, but are not limited to, the following:

> The need for stability in custodial relationship and environment; maintaining an existing primary custodial bond; the relative strength of parental bonds;
> The relative abilities of the parents to provide care, supervision, and a suitable environment for the children and to meet the needs of the children;
>
> . . . . .
>
> The benefits of keeping siblings together, enabling sibling bonds to form;

*Smith v. Smith*, 726 P.2d 423, 425 (Utah 1986); *cf. Ebbert v. Ebbert*, 744 P.2d 1019, 1021 (Utah App.1987) (specific findings not required when custody is not contested), *cert. denied*, 765 P.2d 1278 (Utah 1988).

In the instant case, the trial court made two conclusions of law referring to its findings, and summarized its findings on the custody issue as follows:

a. That both parties are capable of providing care of the minor children.

b. That both parties have participated in acts that bear on their moral character, to-wit: [Wife] with the ZCMI incident and [Husband] with the incident at the bar. Further, the court finds that the incident at the bar did in fact take place and that [Husband] was less than candid in his testimony given to the court regarding the same.

c. That [Husband] has physically abused [Wife] during the marriage.

d. That although [Husband] has had custody of the minor children since 1990; since that period of time is not substantial the court has not given it a great deal of weight.

e. That both parties have a desire for custody and a bonding with the children.

f. That [Wife] was primary caretaker of the minor children during the marriage and prior to the separation in January, 1990.

g. That [Wife] is far more amenable to giving liberal visitation to [Husband] than [Husband] would be to [Wife].

h. That [Wife] has better parental skills than [Husband] based upon her being the primary caretaker.

i. That it is in the best interests of the children that [Wife] be awarded the sole

> The character and emotional stability of the custodian; and
> The desire for custody; the apparent commitment of the proposed custodian to parenting.
>
> *Moon v. Moon*, 790 P.2d 52, 54 (Utah App.1990) (footnotes omitted); *see also Deeben v. Deeben*, 772 P.2d 972, 973 (Utah App.1989) (listing additional factors courts have considered).

care, custody and control of the two (2) minor children of the parties.

 These findings are inadequate to guide us in assessing the correctness of the court's custody determination. The last finding on the children's best interests is merely a conclusion of law. From the remaining findings, it is impossible to divine how the court reached its final legal conclusion. In their evidentiary presentations, the parties made much of moral character. "Moral standards" are a statutory consideration, Utah Code Ann. § 30–3–10 (1989), and may be relevant to a custody determination to the extent they affect the children's best interests. *See Sanderson v. Tryon*, 739 P.2d 623, 627 (Utah 1987). However, the concept of fault, unrelated to the children's best interests, is irrelevant to the custody decision. *See Marchant v. Marchant*, 743 P.2d 199, 203 (Utah App. 1987). The court's finding on moral character in this case states that "both parties have participated in acts that bear on their moral character," and then proceeds to cite specific examples. This statement gives no guidance regarding how those acts bear on the parties' parenting abilities or affect the children's best interests. Nor does it indicate the relative morality of the parties' acts, if the specified acts do bear on the parties' parenting abilities. The court may be implying that Wife's extramarital sexual act in the public parking terrace is of equal gravity to Husband's request for women's phone numbers at a bar, six months following the parties' separation and divorce filing. If so, it fails to say so. The court's statement that Husband "was less than candid" renders the finding more problematic. Does the lack of candor somehow affect Husband's moral character or was the trial court making a credibility finding? If the court was concerned about credibility, does this mean that the court did not believe Husband's testimony regarding the bar incident or did not believe any of his testimony for lack of candor?

The court may have considered other factors as bearing on moral character. If so, it failed to enumerate what those other factors were. We believe that Husband's abusive conduct toward Wife could be relevant to moral character. *See Marchant*, 743 P.2d at 203–04 & n. 3 ("neither this court nor any other court can excuse or justify or approve intrafamily violence or spouse abuse"). However, the court's sole and conclusory finding on abuse, "[Husband] has physically abused [Wife] during the marriage," is not included in the court's finding on moral character. If the court considered abuse or any other factor in its calculation of moral character, it should have clearly so indicated. Alternatively, the court could have tied its finding of abuse directly to the children's best interests by, for example, finding a pattern of abuse beyond the one culminating incident to which Husband admitted. Absent specific subsidiary findings addressing these concerns we have no way of knowing on appeal how the court's finding on moral character weighs in relation to its scanty findings favoring its outcome. Absent factual findings specifically setting forth the basis for the court's custody determination, we are at a loss to determine whether court abused its discretion in the custody award. *See Smith*, 726 P.2d at 426 ("Proper findings of fact ensure that the ultimate custody award follows logically from, and is supported by, the evidence and the controlling legal principles."). Thus, we remand for more detailed findings. Having made this determination, we do not reach Husband's further contention that the evidence was insufficient to support the findings and that the court abused its discretion in its final determination awarding custody to Wife.

## ALIMONY

 Wife contests the court's nominal alimony award which was based on the court's finding that "both parties are currently employed and after deducting the obligations that [Husband] has pursuant to the findings herein, it is reasonable that [Wife] only be awarded One Dollar ($1.00) per year as alimony." Husband maintains that Wife's remarriage on about September 12, 1991 moots this contention under Utah Code Ann. § 30–3–5(5) (1989). This statute states that "[u]nless a decree of divorce

specifically provides otherwise, any order of the court that a party pay alimony to a former spouse automatically terminates upon the remarriage of that former spouse." Although this section extinguishes any alimony claim Wife could make subsequent to September 12, 1991, it does not moot her claim to alimony during the approximately nine-month interim period after the divorce was decreed but before Wife remarried. "The purposes of alimony include enabling the receiving spouse to maintain, as nearly as possible, the standard of living enjoyed during the marriage, preventing the receiving spouse from becoming a public charge," and equalizing the parties' standards of living. *Munns v. Munns*, 790 P.2d 116, 121 (Utah App.1990) (citations omitted). The trial court must consider three factors in fixing a reasonable alimony award to the receiving spouse:

■ the financial conditions and needs of the receiving spouse;

■ the ability of the receiving spouse to produce a sufficient income; and

■ the ability of the supporting spouse to provide support.

*See Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985);[4] *Bell v. Bell*, 810 P.2d 489, 492 (Utah App.1991). This analysis of alimony payments, which determines the parties' future needs and abilities to pay, is necessarily separate from the analysis of property distribution, which equitably distributes the parties' current assets and liabilities. Hence, the court must make separate findings on these factors. Nowhere in its findings of fact or statements in the record did the court make a specific analysis of the parties' circumstances in light of these three factors. Although it did make findings on the parties' gross income in relation to its child support calculation, the court failed to make adequate findings on the parties' relative needs, or to make a comparison of their relative abilities to provide support. We thus remand for findings on these alimony factors and conclusions of law in accord with those findings.

## PROPERTY DISTRIBUTION

■ Both parties contest the court's property distribution. In entering equitable orders to divide the marital estate, the trial court has considerable discretion, which we will not disturb on appeal, as long as the trial court exercises this discretion in harmony with the standards set by the appellate courts. *Munns v. Munns*, 790 P.2d 116, 118 (Utah App.1990). To accommodate review, the court's distribution must be based on adequate findings which "place a dollar value on the distributed assets," *id.* at 119, and liabilities. Husband contests the court's division of assets, claiming that the $3,000 Wife withdrew from her stock savings accounts should have been subject to the same equal division that the court used to divide the rest of the assets. Husband made the same claim in his motions for a new trial and to alter or amend the decree. In its minute entry dated February 1, 1991, the trial court reminded Husband that the stock withdrawal had been added back in and made subject to the equitable distribution at trial. After reviewing the record, we agree. Husband has no factual basis for his claim.

■ In her cross appeal, Wife contests the trial court's division of the parties' liabilities. The court split a number of liabilities evenly between the parties. Then debts owing on property were subtracted from the value of property the parties were awarded. In addition, the court held Husband liable for the remainder of the loan he had taken from his parents, which amounted to $3,140 after subtracting the evaluator's fees, which were shared equally by the parties. The court held Wife liable for the evaluation fees of the experts who testified in her behalf, and for a total of $1,586 in debts: $256 to Dr. Wallace, $750 on the Visa overdraft, $80 to Dr. Rigby, and $500 to Blazer Finance. Wife testified that she had used the Blazer Finance loan

---

**4.** Courts frequently refer to these factors as the *Jones* factors. However, recognizing that alimony might be paid from a wife to a husband, we alter the language of the *Jones* factors to be gender neutral. We also recognize that the first factor consequently implies a weighing of the relative needs of the two parties to determine which spouse receives alimony.

to pay her attorney fees and doctor bills. Even if Husband used the entire $3,140 remaining from his parents' loan to pay his attorney fees, as Wife claims, we believe that in dividing these liabilities the court was well within the bounds of its discretion. Taking the value of all the parties' assets and liabilities as a whole, a disparity of this type would not be so disproportionate as to be an abuse of the court's discretion in making an equitable distribution.

## GROSS INCOME

 Husband claims that the court's findings regarding his gross income for the purpose of computing child support were inaccurate and do not reflect his current earnings. Husband has failed to marshal the evidence and show that the court's findings on this fact were against the clear weight of the evidence. *See Riche v. Riche,* 784 P.2d 465, 468 (Utah App.1989). Husband also made this claim in his motions for a new trial and to alter or amend. The court stated that the finding was based on evidence submitted by Husband himself as to his gross income. The court stated, "If plaintiff's gross income is now substantially different from the Court's finding at the time of trial then of course a petition to modify would be appropriate." We agree. Husband's assertion that he submitted his evidence subject to a motion to amend his income representation is also factually inaccurate. Instead, the court received the evidence subject to a motion to amend Wife's monthly medical and dental insurance figures. Accordingly we find no error.

## ATTORNEY FEES

 Wife requests attorney fees at trial and on appeal. Attorney fee determinations at trial lie within the trial court's sound discretion. *Munns v. Munns,* 790 P.2d 116, 123 (Utah App.1990). Consequently, we will not disturb the court's finding that "both parties are capable of paying the same," because we find no abuse of discretion. Attorney fees may be awarded on appeal if the appeal is frivolous. Utah R.App.P. 33. A frivolous appeal is "one that is not grounded in fact,

not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." Utah R.App.P. 33(b). However, an unsuccessful appeal which has some merit is not frivolous. *See Hinckley v. Hinckley,* 815 P.2d 1352, 1355–56 (Utah App.1991). Because Husband's custody issue was entirely legitimate, we deny Wife attorney fees on appeal.

## CONCLUSION

We have considered Husband's contentions regarding sanctions and find them to be without merit. Thus, we affirm on all matters except alimony and custody, on which we remand for findings of fact and conclusions of law consistent with those findings. "We do not intend our remand to be merely an exercise in bolstering and supporting the conclusion already reached." *Allred v. Allred,* 797 P.2d 1108, 1112 (Utah App.1990). In fleshing out findings of fact, the trial court may find that it reaches a different conclusion on remand.

ORME, J., concurs.

GARFF, Judge (dissenting):

I dissent to the majority's remand of the issue of custody.

## DETAILED FINDINGS

I would affirm the trial court's findings regarding custody on the basis that they are sufficiently detailed to allow for appellate review, and that they are supported by sufficient evidence in the record.

> When appellant attacks the evidence, we begin our analysis with the trial court's finding of fact, not with an appellant's view of the way the trial court should have found. In order to challenge the trial court's findings of fact, appellant must first marshal the evidence which supports the finding and then demonstrate that, despite this evidence, [it is] clearly erroneous.

*Christensen v. Munns,* 812 P.2d 69, 73 (Utah App.1991) (citations omitted). Thus, we first analyze whether the findings were sufficiently detailed for appropriate review

on appeal. *Ebbert v. Ebbert,* 744 P.2d 1019, 1021 (Utah App.1987).

While case law suggests dozens of factors courts may consider when determining custody, *see, e.g., Hutchison v. Hutchison,* 649 P.2d 38, 41 (Utah 1982); *Moon v. Moon,* 790 P.2d 52, 54 (Utah App. 1990), few factors are mandatory. This is because "[t]hese factors are highly personal and individual, and do not lend themselves to the means of generalization employed in other areas of the law." *Moon,* 790 P.2d at 54.

The mandatory factors are "the best interests of the child and the past conduct and demonstrated moral standards of each of the parties," and "which parent is most likely to act in the best interests of the child, including allowing the child frequent and continuing contact with the noncustodial parent as the court finds appropriate." Utah Code Ann. § 30–3–10 (1989).

Here, the court based its award of custody on nine findings which adequately address these factors. The findings address both parties' capacity to provide care, their moral character, Husband's credibility, Husband's physical abuse of Wife, the weight given to Husband's period of temporary custody, both parties' desire for custody and bonding, that Wife was the primary care provider during the marriage up to the separation, the brief period of Husband's temporary custody and the court's decision not to accord it great weight, Wife's amenability to allowing liberal visitation, his lack of amenability to do the same, her superior parenting skills, and finally, the best interests of the children.

Moreover, many of the findings go directly to Wife's award of custody. Specifically, findings f, g, and h deal with Wife being the primary care provider, her amenability to visitation and his lack of same, and Wife's superior parenting skills. In addition to these, findings c and d, dealing with Husband's physical abuse of Wife, and the court's decision not to give great weight to Husband's temporary custody, also weigh in favor of Wife's award of custody. Finally, the other findings, while not specifically favoring Wife over Husband, nevertheless serve to support the award of custody.

I agree that some of the findings are not as detailed as we would like, however, taken as a whole, the findings are sufficiently detailed to allow for appellate review.

### SUFFICIENCY OF EVIDENCE

The majority deems the findings as so lacking in detail that appellate review of them is impossible. It thus sidesteps our standard for reviewing findings of fact and it sidesteps the requirement for Husband to marshal the evidence and to show how the marshaled evidence is legally insufficient to support the disputed findings.

Once we determine the findings are sufficiently detailed to allow for review, "[w]e give great deference to the trial court's findings of fact and do not overturn them unless they are clearly erroneous." *Riche v. Riche,* 784 P.2d 465, 467 (Utah App. 1989). This standard remains the same even where the findings are based on disputed evidence because we "defer to the trial court to judge the credibility of witnesses." *Id.;* Utah R.Civ.P. 52(a). We defer to the trial court because it is better suited to assess the factors upon which it based its determination, given its proximity to the parties and circumstances, and its opportunity to personally observe and evaluate the witnesses. *Alexander v. Alexander,* 737 P.2d 221, 223 (Utah 1987); *Shioji v. Shioji,* 712 P.2d 197, 201 (Utah 1985); *Riche,* 784 P.2d at 467; *Myers v. Myers,* 768 P.2d 979, 984 (Utah App.1989). I emphasize that the "issue on appeal is not whether the trial court's findings accord with our own view of the evidence, but whether, viewing the evidence and the reasonable inferences therefrom in the light most favorable to the findings, the findings are supported by the evidence." *Shioji,* 712 P.2d at 201. This standard of review does not change in cases where the evidence is "hotly disputed."

Given this standard of review, the next step in the analysis should have been to determine whether the findings are supported by sufficient evidence. *Id.*

Instead of analyzing this question, the majority, both in the facts section and in the analysis section, reweighs the evidence and reargues issues of morality and physical abuse. Such arguments are gratuitous in light of the standard of review. I would confine the analysis to evaluating whether the evidence *supporting* the findings is legally sufficient.

In this case, the evidence is legally sufficient so as to support the court's findings. I would therefore affirm the court's award of custody to Wife.